Jo-Ann Edinburg Pinkowitz & others[1] *vs.* Dorothy B. Edinburg & another.[2]

Norfolk. February 13, 1986. — May 19, 1986.

Present: Greaney, C.J., Brown, & Smith, JJ.

*Jurisdiction,* Probate Court, Appointee of court. *Court Reorganization Act. Chief Administrative Justice. Executor and Administrator,* Removal. *Trust,* Removal of trustee. *Probate Court,* Removal of fiduciary, Administrator, Jurisdiction, Notice. *Notice. Fiduciary.*

An order of assignment from the Chief Administrative Justice of the Trial Court, acting pursuant to G. L. c. 211B, §§ 3 and 9, in connection with five related cases brought in two different departments of the Trial Court, was effective to empower a judge of the Middlesex Division of the Probate and Family Court Department to act lawfully as a judge of the Norfolk Division of that department and, in that capacity, to resolve all questions relating to the administration of a certain estate and trust in Norfolk County. [185-186] Brown, J., concurring.

In the context of a Probate Court proceeding brought by the remainder beneficiaries of a trust, initially seeking an order compelling the trustees to file an inventory and accounts in connection with both the trust and the settlor's estate, there was no merit to the contention of one of the respondents that she had received inadequate notice of a subsequently-filed petition for her removal as a trustee of the trust and as an executrix of the estate, where the respondent had knowingly failed to comply with the court's previous orders for an inventory and accounts; where she had been present in court when her attorney represented that he would be ready for a hearing on the petition on the date fixed by the judge; and where the judge could reasonably have concluded that a failure to have the removal petition heard expeditiously might be detrimental to the parties. [186-188] Brown, J., concurring.

Where, in a Probate Court proceeding brought by the remainder beneficiaries of a trust, the judge's warranted findings established overwhelmingly that one of the respondents had unlawfully attempted to profit from her positions as trustee and as an executrix of the settlor's estate, the judge

---

[1] John D. Edinburg and Hope Edinburg.

[2] Bessie K. Braude, who died after the litigation commenced.

acted properly within his discretion in removing her from both positions. [188-189] BROWN, J., concurring.

Where a fiduciary's misconduct clearly warranted a Probate Court judge in removing her from positions as an executrix of her father's will and as a trustee of a substantial trust established under that will, and where the remaining fiduciary, the testator's widow, was of advanced years, in poor health, and lacking knowledge of the estate's affairs, the judge had discretion to appoint an attorney and a banking institution to the respective positions of executor and trustee notwithstanding provisions of the settlor's will dealing with the replacement of fiduciaries. [189-190] BROWN, J., concurring.

PETITION for probate filed in the Probate Court for the county of Norfolk on September 10, 1959.

A petition for removal of an executrix and trustee filed on July 26, 1983, was heard by *Edward M. Ginsburg, J.*

*Geoffrey D. Wyler* for Dorothy B. Edinburg.

*George S. Abrams (Peter J. Sonnabend* with him) for the plaintiffs.

GREANEY, C.J. This case is the first appeal in the so called Edinburg litigation, which is being decided today in five opinions.[3] Here we are concerned with Dorothy B. Edinburg's removal from her position as an executrix of the will of her father, Harry B. Braude, and from her position as a trustee of the trust established under that will. Dorothy makes several arguments urging reversal of the judgment. We reject the arguments and affirm the judgment.

Harry B. Braude died on August 28, 1959. His will was filed in the Norfolk County Probate Court on September 10, 1959. The will was allowed on October 7, 1959, and Harry's wife, Bessie K. Braude; his daughter Dorothy; Dorothy's husband, Joseph M. Edinburg; and Joseph's uncle, Mr. Joseph Talamo, an attorney, were qualified as executors of the will.

---

[3] The litigation was protracted in the trial court and has resulted in a voluminous record on appeal. In deciding the appeals, the court has examined a record consisting of 11,106 pages and briefs compatible with a record of that size.

Under the will, the principal assets in the estate were left in a testamentary trust. Bessie and Dorothy were made equal life beneficiaries of the trust, and the remainder beneficiaries are the children of Dorothy. Joseph and Dorothy's three adult children are the three petitioners herein. Although the will appointed Bessie, Dorothy, and Joseph to be trustees of the trust established by the will, it was almost fifteen years after Harry's death, on August 2, 1974, before they formally petitioned to qualify as appointed trustees.[4] The three were appointed on the same day. At that time they had not filed the inventory or any account in connection with their executorship of Harry's will.[5] The trustees thereafter failed to file the inventory or any account in connection with their administration of the trust.

On April 8, 1983, some twenty-three years after their grandfather's death, and some nine years after the qualification of the trustees, the three children of Dorothy and Joseph filed a petition in the Probate and Family Court Department, Norfolk Division, against Bessie and Dorothy, the two remaining executors and trustees,[6] an order that they file inventories and accounts in connection with both the estate and the trust. On the same day, a judge of the Probate and Family Court Department, Norfolk Division, ordered Bessie and Dorothy to file inventories and accounts in both the estate and the trust no later than May 11, 1983.

On May 10, 1983, Dorothy's present counsel, Mr. Geoffrey D. Wyler, appeared for Bessie and Dorothy, and moved for a one-week extension to comply with the court's April 8 order. The children assented, and the motion was allowed. On

---

[4] The will also nominated Old Colony Trust Company (as it was then known) as a trustee and further provided that if the "Old Colony Trust Company shall fail or cease to serve as corporate trustee hereunder, then New England Trust Company . . . shall serve as corporate trustee in its place." Both banks declined their appointment. No corporate trustee was appointed before the removal petition was allowed.

[5] Mr. Talamo, the fourth executor, died in 1970. No account of his executorship has been filed by a personal representative of his estate.

[6] The petitioners' father, Joseph, died on February 16, 1983.

May 18, another extension, this time for ninety days, was requested by counsel for Bessie and Dorothy. (A second lawyer, Mr. John P. Zelonis, also appeared for Bessie and Dorothy and joined in Mr. Wyler's request.) A hearing was held on the motion, and a second probate judge denied the request. However, the judge who had made the original order had extended the date for the filing of the inventories and accountings to June 8, 1983.

On May 18, 1983, counsel for the children wrote to the Administrative Justice of the Probate and Family Court Department requesting that all matters in connection with the estates of Harry B. Braude and Joseph M. Edinburg be assigned to the probate judge of the Middlesex Division who was then in the process of hearing the other Edinburg cases pursuant to an interdepartmental order of consolidation and assignment.[7] Counsel for Bessie and Dorothy opposed this request. On June 10, 1983, pursuant to the terms of the interdepartmental order just referred to, the Administrative Justice of the Probate and Family Court Department indicated that he would be assigning all matters in the two estates to the judge of the Middlesex Division for hearing and decision.

June 11, 1983, the date designated for the filing of the inventories and accounts, came and went without compliance by Bessie and Dorothy with the Probate Court's orders. On July 1, 1983, Bessie and Dorothy filed an inventory of the estate of Harry B. Braude. The inventory estimated the value of the personal estate, as of June 20, 1983, at $3,655,234. No inventory has been filed for the trust (although Dorothy testified that in 1983 the trust had a corpus exceeding $5,000,000 in

---

[7] This assignment represented the last in a series of orders, the first of which was made on July 21, 1981. The orders were issued by the Chief Administrative Justice of the Trial Court, acting upon the joint recommendations of the Administrative Justices of the Superior Court and Probate and Family Court Departments. The orders consolidated the several pending Edinburg cases and authorized the probate judge of the Middlesex Division to sit simultaneously as a judge of both trial court departments to hear and decide the cases, and in this case to sit as a judge of the Norfolk Division of the Probate and Family Court Department.

value), and no account has been filed for either the estate or the trust.

On July 26, 1983, the children formally filed, as a Norfolk County matter, a petition to remove Dorothy from her position as an executrix and trustee. On the same day their counsel served copies of the petition in hand on both Mr. Wyler and Mr. Zelonis,[8] who, as has been noted, appeared generally for Bessie and Dorothy. On July 27, Mr. Wyler, as Dorothy's lead counsel, represented, in response to questioning by the judge regarding the scheduling of a hearing on the removal petition, that he would be ready to be heard on the merits of the petition by August 3 or 4. On the next day (July 28), Mr. Wyler sought to change his representation and to request a continuance. The judge denied the request and ordered that a hearing on the issue of whether Dorothy should be removed as executrix of her father's will and as trustee of the ·trust established under that will be set down for August 3, 1983.

On August 3, Dorothy and both her counsel, Mr. Wyler and Mr. Zelonis, failed to appear. (Bessie was aged and infirm and did not appear at any of the hearings.) Instead, Mr. Paul T. Smith filed a special appearance for Dorothy, along with motions seeking a continuance and the judge's recusal.[9] Both motions were denied. The judge then entered an order, accompanied by a memorandum, which (a) removed Dorothy as executrix and trustee in connection with her father's estate;[10] and (b)

---

[8] Accompanying the petition were portions of Dorothy's testimony under oath in two of the Superior Court actions; the orders of the probate judges directing that inventories and accountings be rendered; and reports by a guardian ad litem and a temporary trustee (which will be described in more detail later in this opinion). The originals of all the documents, transcripts and reports were in the judge's courtroom. By July 27, all the original papers in the Harry B. Braude estate and trust, and those in the Joseph M. Edinburg estate, were delivered to the judge from the Registry of Probate in Norfolk. The filing and service of the petition occurred while the other consolidated cases were being tried before the judge, who, with the understanding of all counsel, had set aside part of June and all of July, 1983, to hear the Edinburg litigation.

[9] This motion in effect renewed a previous motion that had been filed, heard and denied several months previously. The recusal issue is dealt with in *Edinburg* v. *Cavers, post* 212 (1986), decided today.

[10] The judge retained Bessie as an executrix.

appointed a Boston lawyer and a Boston bank as administrators d.b.n. c.t.a. of Harry B. Braude's estate and as trustees of the trust established under his will. The order directed Dorothy to turn over to them all papers and documents within her control or available to her necessary for the preparation and filing of inventories and accountings, and it further directed Dorothy to cooperate with the new fiduciaries in the completion of those documents. Dorothy's application to stay the order was denied, after hearing, by a single justice of the Supreme Judicial Court.

1. *Jurisdiction and notice.* Dorothy's first set of arguments asserts that the removal order is a nullity for lack of jurisdiction or, at the least, subject to attack because of improper notice.

Her jurisdictional argument is to the effect that "[t]he Middlesex Probate Court had no power to act on a Norfolk Probate Court action." The argument relies on the fact that the Harry B. Braude estate was from its inception a Norfolk County matter, and refers to G. L. c. 215, § 1, and other statutes that confine a probate court's jurisdiction to matters properly brought within its county.

The argument overlooks the application to the case of the Court Reorganization Act, G. L. c. 211B, inserted by St. 1978, c. 478, § 110. The Act empowers the Chief Administrative Justice of the Trial Court, in the interests of effective allocation of judicial resources, to assign judges from one trial court department to another trial court department and, as necessary, to assign judges from one division of a trial court department to another division of the same department. G. L. c. 211B, §§ 3 and 9. Once an interdivisional assignment is made, the judge so assigned "shall have and exercise all the powers and duties which a justice appointed to the. . . division. . . in which said justice is sitting, has and may exercise." See also G. L. c. 215, § 1, as appearing in St. 1978, c. 478, § 128 ("The probate and family court department established under [G. L. c. 211B, § 1] shall consist of divisions, one for each county . . .").

Here, there was discussion among all counsel as early as March 31, 1983, to the effect that efficient case management called for the assignment of all proceedings in the Harry B.

Braude estate to the probate judge of the Middlesex Division who had previously been designated by interdepartmental (and interdivisional) orders of consolidation and assignment to hear and decide the other Edinburg litigation. That discussion included notice by counsel for the children to counsel for Bessie and Dorothy that the children were about to initiate petitions to compel the rendering of inventories and accountings with respect to both the estate and the trust. The assignment of the Braude estate to the judge was accomplished by means of an order of assignment from the Chief Administrative Justice. The order, in effect, made the judge a judge of the Norfolk Division while leaving the situs of the case in that county. That order was properly entered pursuant to §§ 3 and 9 of G. L. c. 211B, consistent with the broad terms of the previously existing order of consolidation and assignment, which had also been framed pursuant to the authority conferred by the Court Reorganization Act. See *Custody of a Minor (No. 1),* 391 Mass. 572, 578-579 (1984). See, in general, *Konstantopoulos* v. *Whately,* 384 Mass. 123, 129-130 (1981). The assignments empowered the judge to act lawfully as a judge of the Norfolk Division of the Probate Court and, in that capacity, to resolve all the questions raised by the parties concerning the administration of the Harry B. Braude estate.[11]

Moreover, we see no basis for overturning the removal order for lack of adequate notice. The purpose of notice is to give fair warning to a party of the nature of an opponent's claim, a reasonable opportunity to engage counsel, and the time to prepare to oppose the claim. See *Milton* v. *Massachusetts Bay Transp. Authy.,* 356 Mass. 467, 471 (1969). In the usual case, these purposes will be satisfied by the initiating party's compliance with appropriate Probate Court rules for notice.

---

[11] We reject Dorothy's additional argument that the removal papers were not properly before the judge because they did not receive a Norfolk County date stamp until August 22. The record leaves no doubt that the relevant papers pertaining to removal were filed on the dates in late July and early August, 1983, mentioned in the statement of facts, and that they were properly received by the judge on those dates.

Dorothy and her counsel were well aware that, without any apparent justification, she had failed to comply with the orders to render accounts in her father's estate, see G. L. c. 195, § 11, and an inventory and accounts in his testamentary trust. All parties were cognizant of facts, as will be discussed in more detail in part 2 of this opinion, that required the judge to act with some promptness to redress serious violations of fiduciary obligations. See *Quincy Trust Co.* v. *Taylor,* 317 Mass. 195, 199 (1944). Cf. *Clymer* v. *Mayo,* 393 Mass. 754, 763 (1985). Service of the removal petition was made in hand on counsel for Bessie and Dorothy. Dorothy was present in the courtroom, both when service was made and when the judge made his order that the merits of the petition would be heard on August 3. No written motion to dismiss the petition for lack of adequate service or notice was filed. Furthermore, when called upon by the judge to state when he would be ready to address the petition, Mr. Wyler, Dorothy's lead counsel, indicated to the judge that he needed "at the minimum" until August 1, but "[i]n any event, if [the petition] was dealt with next Wednesday or Thursday [August 3 or 4], that would obviate all the problems."

Rather than constituting a new and independent proceeding, we view the petition as representing an integral part of the prior proceedings seeking inventories and accounts and the next logical step in those long-standing proceedings. See *Stoskus* v. *Stoskus,* 315 Mass. 12, 16 (1943) (nature of pleading filed in a case is determined by its substance, not its name). Accord *Fabrizio* v. *U.S. Susuki Motor Corp.,* 362 Mass. 873 (1972). The judge could properly have concluded that a failure to have the petition heard expeditiously might be detrimental to the parties, see *Guardianship of Bassett,* 7 Mass. App. Ct. 56, 66-67 (1979); contrast *Dowd* v. *Morin,* 18 Mass. App. Ct. 786, 791 (1984), and might also subject the court to criticism. He was not required to relieve Dorothy's counsel from his representation that he would be ready to address the petition on August 3 or 4. In the circumstances, where some speed in resolution was called for, and where there has been no showing of what Dorothy could have produced in opposition if she had

had more time, we conclude that service and notice requirements as to Dorothy's interests were satisfied.[12]

2. *Dorothy's removal.* There is ample basis for the judge's order removing Dorothy from her fiduciary positions.

Removal of a fiduciary is committed to the sound discretion of the trial judge. See G. L. c. 203, § 12; *Cooney* v. *Montana,* 347 Mass. 29, 38 (1964); *Chase* v. *Pevear,* 383 Mass. 350, 370 (1981). The general standard governing the question of removal has been set forth in *Quincy Trust Co.* v. *Taylor,* 317 Mass. at 196-197 as follows:

> "Past maladministration of a comparable trust, bad character, misconduct, neglect of duty, or physical or mental incapacity, warrants a finding that an executor or administrator is unsuitable. Such a finding may also be based upon the . . . mental attitude toward his duty or toward some person interested in the estate that creates reasonable doubt whether the executor or administrator will act . . . fairly and dispassionately in his trust. It may also be based upon any other ground for believing that his continuance in office will be likely to render the execution of the will or the administration of the estate difficult, inefficient or unduly protracted. Actual dereliction in duty need not be shown."

From the materials before him, see note 8, *supra,* and his opportunity to observe Dorothy's candor and demeanor during her lengthy testimony in other trials, the judge could permissibly find: (a) that Dorothy had neglected or defied court orders for the filing of an account or accounts as to the affairs of the estate, see G. L. c. 195, § 11,[13] and an inventory and an account or accounts as to the affairs of the trust; (b) that the estate and trust were worth many millions of dollars; (c) that

---

[12] For the reasons discussed, we also reject the argument that Bessie had inadequate notice.

[13] Her previous failure to file accounts as an executrix was a violation of G. L. c. 205, § 1 and c. 206, § 1.

Dorothy had claimed that she had committed perjury in testimony under oath and had filed false documents; (d) that she had commingled the assets of the children's trusts with her own personal funds; (e) that she had failed to file income tax returns; (f) that she had interests adverse to those of the children's interests in the estate and the trust;[14] (g) that she did not make known or distribute to her children custodial funds that she held for them; and (h) that Bessie had no knowledge of the affairs of the estate or the trust, in essence delegating her responsibilities in the administration of both totally to Dorothy.[15] The judge may also have given consideration to the absence of counsel for Bessie and Dorothy on the day of the hearing on the removal petition, and their eleventh-hour attempt to avert the hearing. The evidence found credible by the judge established overwhelmingly that Dorothy had unlawfully attempted to profit from her trust and had placed her private interests above her fiduciary duty. There is nothing in Dorothy's other arguments that would call for reversal of the judge's order of removal.

3. *Appointment of Dorothy's replacements.* Clause Fourth of Harry B. Braude's will provides that if, for any reason, any executor should cease to serve, the remaining executors would appoint a successor. The clause further provides that "there shall be no alternate or successor executor in lieu of my . . .

---

[14] A report of a guardian ad litem filed with the judge indicated that Dorothy was hostile toward her daughter Jo-Ann. A report of a temporary trustee appointed by the court to oversee the operation of Chandler & Farquhar, Inc. (the Edinburg family business, control of which is the subject of the opinion in *Edinburg* v. *Cavers, post* 212 [1986],) concluded, among other things, that Dorothy "has used her control of the Braude estate, as well as her own substantial financial resources, to dictate her wishes to the children." Both of these reports were before the judge.

[15] We reject Dorothy's argument that the judge acted improperly in taking notice of facts established in other cases. The cases referred to by her counsel on the point (*Ferriter* v. *Borthwick,* 346 Mass. 391 [1963], and *Furtado* v. *Furtado,* 380 Mass. 137 [1980]) did not involve, as this case does, notice of facts which are parts of the record in consolidated and related matters. We think the materials submitted to the judge fall within the rule pertaining to judicial notice set forth in Liacos, Massachusetts Evidence 22 (5th ed. 1981).

wife." Clause Fifth of the will provides that "no alternate or successor trustees" are to be appointed in lieu of Bessie, Dorothy and Joseph M. Edinburg. After removing Dorothy, the judge appointed a Boston attorney and a Boston bank to take her places as an executor and trustee.

The judge did not exceed his authority in making the appointments. At the time of the new appointments, only Bessie and Dorothy remained as executors and trustees. As has been determined, there was ample basis for finding Dorothy unsuitable. In view of her egregious conduct, it would have been a breach of the court's duty to permit her to name her successors. See 2 Newhall, Settlement of Estates § 407, at 620-621 (4th ed. 1958). It also appears that, at the time of the filing of the removal petition, Bessie was ninety years of age and in poor health. From answers to interrogatories,[16] it is apparent that Bessie lacked any knowledge of the estate's affairs. It can fairly be inferred that Bessie was subject to Dorothy's direction and had not independently performed her fiduciary duties. Bessie died a few months after the removal petition was filed. We are satisfied, as was the judge, that the will did not adequately provide for the situation that in fact existed, in which one of the two surviving fiduciaries (Bessie) was physically or mentally unfit and the other (Dorothy) legally unfit, to appoint successors.[17] In the circumstances, the judge had discretion to appoint two new fiduciaries. See G. L. c. 203, § 5, and G. L. c. 195, § 11.

The judgment is affirmed. We consider the appeal as lacking substantial merit. The petitioners are to recover double costs and appellate counsel fees in the sum of $2,500; both sums are to be contained in an execution against Dorothy B. Edinburg

---

[16] These answers were received in one of the related cases, where Bessie was excused from giving a deposition because of her ill health.

[17] This situation removes the case from the class of cases where the will or trust confers the power to appoint a successor upon a person who is both willing and able to make the appointment. See and compare *Massachusetts Gen. Hosp.* v. *Amory,* 12 Pick. 445 (1832); *Attorney Gen.* v. *Armstrong,* 231 Mass. 196 (1918); *Boston Safe Deposit & Trust Co.* v. *Taylor,* 262 Mass. 287 (1928).

to issue from, and to be enforced by, the Probate and Family Court Department in Norfolk County.

*So ordered.*


BROWN, J. (concurring). I fully agree with the court's conclusion that the defendants' arguments are without substance. It is fair to infer from the record in this case that once again painfully and regrettably the "hired gun" prototype appears on the scene. See *Kennedy* v. *Kennedy,* 20 Mass. App. Ct. 559, 564 (1985) (Brown, J., concurring).

Double costs and substantial counsel fees on appeal are certainly warranted here. I applaud this court's making manifest its displeasure with lawyers who effect unnecessary delays in legal proceedings in order to shield their clients' inaction. I also am pleased that this time the court has driven a stake through the heart of that unprofessional, but all too frequent, practice of filing a motion for a continuance "pending the passage of time."