B.W. *vs.* J.W. & another.[1]

No. 05-P-1260.

Suffolk. May 9, 2006. - September 8, 2006.

Present: ARMSTRONG, C.J., PERRETTA, DREBEN, GREEN, & GRAINGER, JJ.

*Practice, Civil,* Summary judgment. *Trust,* Removal of trustee. *Undue Influence.*

A probate judge erred in dismissing a plaintiff's complaint seeking removal of a trustee, where the plaintiff's allegations demonstrated sufficient proof to establish the essential elements of a claim of undue influence. [297-300]

CIVIL ACTION commenced in the Suffolk Division of the Probate and Family Court Department on November 30, 2001.

The case was heard by *John M. Smoot,* J., on motions for summary judgment.

*Roger A. Lane* for the plaintiff.

*William Shaw McDermott* (*Gregory R. Youman* with him) for J.W.

*William L. Patton* (*John H. Ray, III,* with him) for M.W.

GRAINGER, J. The plaintiff (B.W.) appeals from a judgment of the Probate and Family Court Department on the defendant's (J.W.'s) motion for summary judgment.[2] The judgment dismissed, in its entirety, B.W.'s amended complaint that sought removal of J.W. as cotrustee of the MBW 1942 Trust and the MBW 1956 Trust (trusts). We reverse.

*Background.* The parties are three brothers. B.W. and J.W. are cotrustees of the trusts and M.W. is the sole beneficiary of the trusts. M.W. was born on May 8, 1938. As a result of a seizure disorder and a birth injury that left him with partial paralysis,

---

[1]M.W.

[2]M.W. also filed a motion for summary judgment that adopted the arguments raised in J.W.'s motion for summary judgment.

M.W. received a limited education and was not conventionally employed. He has never married. His assets are valued in the tens of millions of dollars and are largely distributed among numerous trusts and family-owned corporations. J.W. has served as M.W.'s investment advisor and as trustee, or as cotrustee, of at least four trusts of which M.W. is the beneficiary.

Count I of the complaint alleged J.W.'s "lack of ability" to administer a trust[3]; count II is based on J.W.'s alleged exercise of undue influence and self-dealing. In support of both counts the plaintiff alleged a series of improprieties and made evidentiary submissions spanning roughly a decade, from the late 1970's through the 1980's. J.W. counterclaimed, alleging that the plaintiff had violated his fiduciary duty by filing a baseless lawsuit against the wishes of M.W., the very beneficiary he was ostensibly seeking to protect, and that the plaintiff, rather than J.W., was the trustee meriting removal. The parties proceeded to discovery in the course of which the plaintiff noticed the deposition of M.W. Through counsel, M.W. moved to quash the notice on the grounds that the attendant stress would likely precipitate seizures and a general deterioration in his health. The motion to quash, supported by an affidavit from M.W.'s treating neurologist, was allowed without prejudice pending depositions of J.W., B.W., and M.W.'s physician.

After the conclusion of his own and J.W.'s depositions, the plaintiff renewed his effort to depose M.W. by way of a motion to compel; the motion also sought a physical and mental examination of M.W. pursuant to Mass.R.Dom.Rel.P. 35 (1974). The probate judge denied the plaintiff's motion to compel and appointed a guardian ad litem (GAL) "to evaluate the allegations in

---

[3]Count I of the complaint, captioned "Lack of Ability [t]o Administer Trust," addressed a fairly narrow issue relating to the plaintiff's and J.W.'s inability to agree on the appointment of investment counsel to the 1942 trust. That issue apparently has been resolved. The probate judge's memorandum of decision and judgment has somewhat realigned the issues in the complaint, describing count I as complaining of self-dealing and related activities between 1977 and 1988, and count II as a claim of undue influence. Because the plaintiff has presented factual questions relevant to both self-dealing and undue influence sufficient to survive summary judgment on these issues, our discussion will deal with them on a combined basis without referring to the counts of the complaint.

this case concerning [M.W.'s] physical, mental, emotional and psychological condition as well as the allegations that [M.W.] has been and remains susceptible to undue influence."

The GAL's report, discussed in greater detail below, concluded that neither the physical nor the cognitive disabilities of M.W. affected his ability to make reasoned decisions concerning his personal welfare, but that these same disabilities, coupled with his sheltered lifestyle, a strong desire to avoid confrontation, and substantial reliance on others, rendered him susceptible to undue influence.

*Discussion.* "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). See Mass.R.Dom.Rel.P. 56(h) (2000).[4] In order to affirm the judgment, we are required to conclude, on the basis of the record, that the plaintiff has no reasonable prospect at trial of establishing facts that would support the probate judge's removal of a trustee. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 711-712 (1991). The general standard governing the removal of a fiduciary requires "[p]ast maladministration of a comparable trust, bad character, misconduct, neglect of duty, or physical or mental incapacity . . . . Actual dereliction in duty need not be shown." *Pinkowitz* v. *Edinburg*, 22 Mass. App. Ct. 180, 188 (1986), quoting from *Quincy Trust Co.* v. *Taylor*, 317 Mass. 195, 196-197 (1944). See *Edinburg* v. *Cavers*, 22 Mass. App. Ct. 212, 228 n.16 (1986). Otherwise stated, the judge may remove a trustee "if [he] finds that such removal is for the interests of the beneficiaries of the trust or if [the trustee] has become . . . otherwise incapable or is unsuitable therefor." G. L. c. 203, § 12, as amended by St. 1987, c. 522, § 8.

Here the complaint alleged a pattern of self-dealing, undue influence, and fraud beginning with the claim that J.W. induced

[4]Rule 56(c) of the Massachusetts Rules of Civil Procedure, 365 Mass. 824 (1974), in pertinent part is substantially the same as Mass.R.Dom.Rel.P. 56(h), and for the purposes of this opinion, we will rely on case law construing the civil rule.

M.W. to revise his 1977 estate plan so that the plaintiff was excluded from the will. Additional allegations, accompanied by deposition testimony and, in some instances, documentary evidence, included obtaining a general power of attorney from M.W., pressuring M.W. to make a gift of shares of certain stock to J.W.'s sons, arranging to be appointed as trustee of M.W.'s revocable trust, attempting — at times successfully — to have M.W. transfer management of assets to J.W. or to companies controlled by J.W. for the purpose of collecting management fees, and arranging to acquire shares of stock for J.W.'s sons through a subterfuge involving ostensible purchase by another brother, R.W. Finally it was alleged that by reason of his disability, M.W. has "impaired cognitive abilities," is "susceptible to manipulation and influence," and "lacks the requisite capacity to resist" J.W.'s application of undue influence.

J.W. argued that these allegations, even if accepted as true, are insufficiently related to the trusts at issue, and too remote in time, to support the plaintiff's request for his removal of J.W. as trustee. The decision below contains language that suggests, but does not confirm, that the judge adopted this argument. All conduct, however, not merely behavior limited to the trusts at issue, is relevant to resolve an action to remove a trustee. *Pinkowitz* v. *Edinburg, supra.*

Accepting, therefore, all of the plaintiff's submissions relating to improper conduct as relevant and admissible, we do not agree that the defendants discharged their burden as the moving parties by demonstrating "that there is an absence of evidence to support the non-moving party's case," *Kourouvacilis* v. *General Motors Corp., supra* at 711, citing *Celotex Corp.* v. *Catrett,* 477 U.S. 317, 322 (1986), entitling the defendants to judgment as a matter of law on claims of self dealing or that plaintiff failed to "show with admissible evidence the existence of a dispute as to material facts." *Kourouvacilis* v. *General Motors Corp., supra,* quoting from *Godbout* v. *Cousens,* 396 Mass. 254, 261 (1985). See Mass.R.Dom.Rel.P. 56(h). The possibility, or even the likelihood, that a trial on the merits will result in a decision adverse to the nonmoving party is irrelevant. *Attorney Gen.* v. *Bailey,* 386 Mass. 367, 370 (1982) ("In considering a motion for summary judgment, the court does not 'pass upon

the credibility of witnesses or the weight of the evidence [or] make [its] own decision of facts.' *Hub Assocs.* v. *Goode*, 357 Mass. 449, 451 [1970]").

We also conclude that for the purposes of summary judgment, the plaintiff demonstrated sufficient proof to establish the essential elements of the claim of undue influence. A claim of undue influence requires proof that "(1) [an] unnatural disposition has been made (2) by a person susceptible to undue influence to the advantage of someone (3) with an opportunity to exercise undue influence and (4) who in fact has used that opportunity to procure the contested disposition through improper means." *Tetrault* v. *Mahoney, Hawkes & Goldings*, 425 Mass. 456, 464 (1997), citing *Heinrich* v. *Silvernail*, 23 Mass. App. Ct. 218, 223 (1986). Evidence offered by the plaintiff, and set out above, satisfied two of these elements of proof — an "unnatural disposition" and procurement thereof "through improper means" — for purposes of surviving summary judgment.

In addition, evidence sufficient to survive summary judgment and satisfying a third element, susceptibility, is found in the affidavit of plaintiff's psychiatric expert, Robert M. Toborowsky, and in the GAL report. Dr. Toborowsky's affidavit included findings of "impaired cognitive ability," "limited social interaction," and an apparent "high level of dependence on a select few individuals."[5]

The GAL report states: "It is my conclusion that because of [M.W.'s] limited disabilities, sheltered lifestyle, strong desire to please and avoid confrontation, and his substantial reliance on others to assist him, both personally and professionally, he is or may be susceptible to undue influence."[6] The GAL report disclaims any intended inference from its conclusion that M.W.

---

[5]Dr. Toborowsky's affidavit is based purely on a review of medical records. The plaintiff did not avail himself of the provisions of Mass.R.Dom.Rel.P. 56(f), but we note that motions seeking to depose M.W. and seeking a medical examination of M.W. by the plaintiff's experts were submitted and had been denied at the time summary judgment was granted. In any event, the Toborowsky affidavit and the GAL report establish the existence of a genuine issue of material fact for the purposes for summary judgment.

[6]The plaintiff argued that the probate judge erred because he relied selectively on the GAL report to the detriment of the nonmoving party. We confine ourselves to the observation that the full contents of the GAL report are properly considered at the summary judgment stage, since the report is

has been or is presently being unduly influenced. Fairly read, the report speaks purely to susceptibility and, fairly characterized, infers neither the actual presence nor the definitive absence of undue influence.

Sufficient proof of the remaining element, "opportunity to exercise undue influence," was satisfied by evidence that J.W. exercised undue influence in the past under circumstances that have remained largely unchanged while he, then as now, was serving as trustee. J.W. countered this evidence by pointing to lawyers, investment advisors, and other counselors who are in a position to enable the beneficiary to resist any alleged undue influence to which he might otherwise succumb. According to the record, there was some turnover among those individuals and it appears speculative to assume M.W. will always have a given level, or avail himself, of protective supervision. Additionally, J.W. has obtained a general power of attorney that limits the ability of third parties to deny J.W. access to information or to restrict his opportunity to act in M.W.'s stead. Thus, the plaintiff has presented sufficient evidence to create a genuine dispute of material fact.

*Conclusion.* The plaintiff has raised genuine issues of material fact. These include (1) whether the misconduct alleged to have been committed by the defendant is sufficiently related to the fiduciary relationships at issue in this case to merit the trustee's removal; (2) whether the beneficiary, M.W., is susceptible to undue influence; and (3) whether opportunity for the exercise of undue influence is negated by the presence of third parties such as attorneys and financial consultants.[7] Accordingly, the judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

admissible at trial so long as the GAL is available for cross-examination. See *Guardianship of Pollard*, 54 Mass. App. Ct. 318, 323 (2002).

[7] We note that the Probate and Family Court Department is vested with broad powers. We express no opinion on the proper resolution of the parties' dispute and emphasize that proving the existence, and weighing the significance, of each specific instance of alleged self-dealing and undue influence is appropriately reserved to a trial on the merits.