NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-122                                          Appeals Court

MERRIMACK COLLEGE  vs.  KPMG LLP.

No. 15-P-122.

Suffolk.     November 2, 2015. - January 6, 2016.

Present:  Milkey, Carhart, & Massing, JJ.

Accountant.  Negligence, Accountant.  Arbitration, Arbitrable
     question, Appropriateness of judicial proceedings.
     Contract, Arbitration.

Civil action commenced in the Superior Court Department on
June 30, 2014.

A motion to compel arbitration was heard by Janet L.
Sanders, J.

Ira M. Feinberg, of New York (Christopher H. Lindstrom with
him) for the defendant.
T. Christopher Donnelly (Kelly A. Hoffman with him) for the
plaintiff.

MILKEY, J.  The defendant, KPMG LLP (KPMG), is an

accounting firm that performed annual audits for the plaintiff,

Merrimack College (Merrimack).  In the underlying action,

Merrimack alleges that KPMG committed malpractice when it failed

to detect serious financial irregularities that occurred in Merrimack's financial aid office during fiscal years 1998 through 2004.  Based on a dispute resolution provision included in a contract the parties executed for fiscal year 2005, KPMG argues that Merrimack waived its right to sue KPMG regarding services it had provided in prior years and was required to arbitrate those claims.  In addition, KPMG maintains that whether Merrimack's pre-2005 claims are subject to compulsory arbitration must be resolved by arbitration.  In a thoughtful decision, a Superior Court judge rejected such arguments and denied KPMG's motion to compel arbitration.  We affirm.

Background.  The essential facts are undisputed.  For the fiscal years at issue in the malpractice action, Merrimack had hired KPMG through a succession of separate annual service agreements.  Each such agreement took the form of a letter that KPMG sent to Merrimack that was then countersigned by Merrimack. None of the annual agreements from 1998 through 2004, referred to by the parties as "engagement letters," makes any mention of arbitration as an available (much less mandatory) means for the parties to resolve disputes that might arise between them.

In claiming that Merrimack's malpractice action nevertheless is subject to binding arbitration, KPMG is relying on the engagement letter that the parties executed for fiscal year 2005.  The 2005 agreement spelled out specific auditing

services that KPMG would provide to Merrimack during that year. Unsurprisingly, in laying out KPMG's affirmative obligations, the 2005 engagement letter is a forward-looking document, referring, for example, to the audit report that KPMG "will issue" in accordance with stated terms. The 2005 engagement letter also expressly contemplated that KPMG could provide "other services" to Merrimack, as may be agreed to by the parties during the course of the year.[1]

For the first time in any of their annual agreements, the 2005 engagement letter included a mandatory dispute resolution provision. In pertinent part, that provision stated as follows:

> "Any dispute or claim arising out of or relating to the engagement letter between the parties, the services provided thereunder, or any other services provided by or on behalf of KPMG or any of its subcontractors or agents to [Merrimack] or at its request (including any dispute or claim involving any person or entity for whose benefit the services in question are or were provided) shall be resolved in accordance with the dispute resolution procedures [a two-tiered process of mediation and binding arbitration] set forth in Appendix II, which constitute the sole methodologies for the resolution of all such disputes. By operation of this provision, the parties agree to forego [sic] litigation over such disputes in any court of competent jurisdiction."

Additional facts are reserved for later discussion.

---

[1] For example, the 2005 engagement letter, which was addressed to and countersigned by Merrimack's vice-president for fiscal affairs, stated that KPMG "can provide other services to provide you with additional information on internal control, which we would be happy to discuss with you at your convenience."

Discussion.  It is axiomatic that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." Massachusetts Hy. Dept. v. Perini Corp., 444 Mass. 366, 374 (2005), quoting from Local No. 1710, Intl. Assn. of Fire Fighters v. Chicopee, 430 Mass. 417, 420-421 (1999).  The principal question we face is whether, as a matter of contract law, the parties agreed that the dispute resolution provision in the 2005 engagement letter was intended to apply retroactively to disputes arising under their earlier agreements.[2]  In addressing that question, "[t]he objective is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose." Sullivan v. Southland Life Ins. Co., 67 Mass. App. Ct. 439, 442 (2006), quoting from Massachusetts Property Ins. Underwriting Assn. v. Wynn, 60 Mass. App. Ct. 824, 827 (2004).  We begin by examining the relevant language of the 2005 engagement letter.

As the excerpt quoted supra indicates, the dispute resolution provision included in the 2005 engagement letter

_____

[2] KPMG insists that because the 2005 engagement letter includes an express arbitration provision, we are to apply a presumption that the current dispute is subject to arbitration. See Falmouth Police Superior Officers Assn. v. Falmouth, 80 Mass. App. Ct. 833, 838-839 (2011).  That would be true if the current dispute arose under the 2005 contract, but it indisputably did not.  The parties agree that disputes arising under the 2005 and subsequent engagement letters, including post-2005 malpractice claims, must be resolved by arbitration.

applies to disputes "arising out of or relating to" three categories of things: (1) "the engagement letter," (2) "the services provided thereunder," and (3) "any other services" that KPMG provided. KPMG acknowledges that the past services that it provided to Merrimack pursuant to earlier engagement letters do not fit within the first two categories. Instead, KPMG claims that its pre-2005 services fit within the sweep of the third category.

KPMG is, of course, correct that the phrase "any other services provided" is broad enough that -- if "taken out of context and read in isolation" -- it could be interpreted as including services that KPMG already had provided before the 2005 agreement went into effect. Downer & Co., LLC v. STI Holding, Inc., 76 Mass. App. Ct. 786, 792 (2010). "However, meaning and ambiguity are creatures of context." Ibid., citing Starr v. Fordham, 420 Mass. 178, 190 & n.11 (1995). See Rubin v. Murray, 79 Mass. App. Ct. 64, 76 (2011) ("The words of a contract must be considered in the context of the entire contract rather than in isolation" [citation omitted]). The fact that KPMG's preferred reading is linguistically possible does not make it a reasonable interpretation of the parties' agreement. See Downer & Co., LLC v. STI Holding, Inc., supra at 792-794 (rejecting linguistically possible interpretation of contractual language as unreasonable when viewed in context).

The question before us is whether, by executing the 2005 engagement letter, Merrimack thereby signed away its right to sue KPMG for malpractice based on services that KPMG previously had provided under wholly separate contracts. In our view, notwithstanding the facial breadth of the term "any other services provided," the only reasonable interpretation of that language in the context of this forward-looking agreement is in reference to services that KPMG would perform after the new contract was executed.[3],[4] Had KPMG wanted to insist that

---

[3] KPMG accurately points out that the relevant portion of the 2005 dispute resolution provision is phrased in the past tense, referencing as it does other services "provided." According to KPMG, an interpretation in Merrimack's favor effectively would rewrite this language so as to refer to services "to be provided." This argument ignores the fact that disputes over KPMG's accounting services typically would arise, as here, only after such services had been performed. In this context, there is nothing unnatural or unexpected about a dispute resolution provision using the past tense to refer to services that were in dispute when the provision is triggered (even though those services had not yet been performed when the contract was executed). Conversely, if the parties instead had referred to disputes over services "to be provided" (the phrasing that KPMG insists is necessary to support Merrimack's reading), the most natural reading of that language would be for it to refer narrowly to future disputes over services that still had not been provided when the dispute arose. Therefore, the dispute resolution provision's reference to services "provided" is of no appreciable import.

[4] Our interpretation does not render superfluous the dispute resolution provision's reference to "any other services provided." As noted, the 2005 engagement letter contemplated that KPMG may provide "other services" beyond those required by the letter, and the dispute resolution provision makes it clear that such services will be subject to the new dispute resolution

Merrimack forfeit its existing rights to pursue a civil action for past disputes, it easily could have included language expressly stating that the dispute resolution provision had retroactive application.  See McInnes v. LPL Financial, LLC, 466 Mass. 256, 265 (2013) (applying arbitration provision retroactively where agreement required arbitration for "any controversy . . . whether entered into prior, on or subsequent to the date hereof").  As we recently observed, where "it would have been a simple matter for" the contract drafter to include a term it now claims is brought within the sweep of arguably ambiguous contractual language, "[w]e see no reason to add th[at] term[] now."[5]  Ajemenian v. Yahoo!, Inc., 83 Mass. App. Ct. 565, 577 (2013).

Our conclusion finds support in analogous cases from other jurisdictions.  See, e.g., Security Watch, Inc. v. Sentinel Sys., Inc., 176 F.3d 369, 373 (6th Cir. 1999), cert. denied sub nom. American Tel. & Tel. Co. v. Security Watch, Inc., 528 U.S.

---

provision regardless of whether the services were performed pursuant to the letter.

[5] This principle has long been observed, see Higginson v. Weld, 14 Gray 165, 171 (1859) ("If the defendants intended to make their contract conditional upon the arrival of the vessel at Calcutta, it would have been easy to say so in express terms. In the absence of such a statement, the court cannot add it by construction"), and it has been applied in the context of arbitration agreements.  See Combined Energies v. CCI, Inc., 514 F.3d 168, 174 (1st Cir. 2008) ("If the parties had intended the arbitration clause to apply . . . , it would have been as easy to state that expressly").

8

1181 (2000) (rejecting retroactive application of arbitration provision in new, "forward-looking" contract, despite seeming breadth of language denoting applicability of provision).[6] The cases that KPMG has cited in its favor are readily distinguishable,[7] or they are simply unpersuasive.

As a secondary argument, KPMG contends that the question whether Merrimack gave up its right to have its malpractice claim against KPMG decided in a judicial forum, itself, must be

---

[6] See also Hendrick v. Brown & Root, Inc., 50 F. Supp. 2d 527, 534-535 (E.D. Va. 1999); Coffman v. Provost * Umphrey Law Firm, L.L.P., 161 F. Supp. 2d 720, 726-727 (E.D. Tex. 2001), aff'd, 33 Fed. Appx. 705 (5th Cir.), cert. denied, 537 U.S. 880 (2002).

[7] The case on which KPMG places the most reliance is Kristian v. Comcast Corp., 446 F.3d 25 (1st Cir. 2006). That case does provide some superficial support for KPMG in that the court there held that a mandatory arbitration provision in a subsequent contract applied to a dispute that arose under an earlier contract even though the subsequent contract did not include express language making that provision retroactive. Id. at 34-36. However, the factual context there is materially different from the one before us. Before the parties in Kristian had executed their new contract, they had entered into an intervening contract that included an arbitration provision that expressly applied retroactively. Id. at 30, 33-34. The court viewed the subsequent contract as a continuation of the existing relationship established by the intervening contract even though the retroactivity clause was for some reason not included. Id. at 35-36. We also note that in an unpublished decision on facts that are more comparable to those before us, the United States Court of Appeals for the First Circuit rejected an argument analogous to the one KPMG is making, characterizing retroactive application of an arbitration provision in a new contract as a "radical" interpretation that the parties could not have intended. Choice Security Sys., Inc. vs. AT&T Corp. & Lucent Technologies, Inc., U.S. Ct. App., No. 97-1774, slip op. at 1 (1st Cir. Feb. 25, 1998).

decided by arbitration.  For this proposition, KPMG relies on language in appendix II to the 2005 engagement letter.  Appendix II, entitled "Dispute Resolution Procedures," describes with particularity how the new dispute resolution provision is to work.  The language on which KPMG relies states as follows:

> "Any issue concerning the extent to which any dispute is subject to arbitration, or any dispute concerning the applicability, interpretation, or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators."

The question of arbitrability is ordinarily for a court to decide, and courts will not defer that issue to arbitration absent "clea[r] and unmistakabl[e] evidence" that the parties agreed to do so.  Massachusetts Hy. Dept. v. Perini Corp., 83 Mass. App. Ct. 96, 100-101, 104-105 (2013), quoting from First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." Granite Rock Co. v. International Bhd. of Teamsters, 561 U.S. 287, 297 (2010).  KPMG has not presented clear and unmistakable evidence that Merrimack ever agreed that only arbitrators could resolve whether disputes that arose under prior agreements nevertheless were subject to the arbitration provision in the 2005 engagement letter.  Indeed, because Merrimack never agreed that earlier disputes were subject to the

new dispute resolution provision (for the reasons set forth supra), it follows that the procedures spelled out in appendix II simply never came into play.

Order denying motion to
  compel arbitration affirmed.
