This appeal arising out of the Probate and Family Court concerns alimony and life insurance provisions contained in a surviving separation agreement executed by former spouses, Richard Wolff (husband) and Janice Wolff (wife). The wife principally challenges (1) the amount of alimony overpayments she is required to repay to the husband, and (2) the termination of the husband's obligation to maintain life insurance. We affirm in part and vacate in part.
Background. The parties were divorced in 1986 pursuant to a judgment of divorce nisi (divorce judgment) incorporating their surviving separation agreement. The separation agreement required the husband (1) to pay monthly alimony to the wife of $1,350, which amount would eventually be reduced by the wife's Social Security benefits when she turned sixty-eight;[3] and (2) to maintain a $100,000 insurance policy on his life, naming the wife as beneficiary thereof. The separation agreement provided that the husband's alimony and life insurance obligations would both terminate in the same manner: upon the wife's death, remarriage, or cohabitation "with an unrelated adult male in the style of a marriage" for at least two years. If the husband failed to maintain the life insurance coverage required by the separation agreement, the wife would "have a first lien and claim against the assets of the [h]usband and against his estate." However, the wife would "have no right with respect to the assets of the estate of the [h]usband" if the husband's obligation to maintain life insurance "terminate[d] in accordance with the [a]greement" prior to his death. With the exception of the alimony provisions, which were modifiable "by order of the [c]ourt" if the husband became "totally disabled," the separation agreement could only be modified pursuant to "an instrument signed and acknowledged" by the parties.
On October 3, 2014, the wife filed a complaint for contempt alleging the husband had failed to maintain the life insurance coverage required by the separation agreement. On November 6, 2014, the husband filed a complaint for modification seeking to terminate his alimony and life insurance obligations on the basis that he was "totally disabled," his previous life insurance policies had expired, and he was unable to obtain new life insurance due to his "heart condition." On February 5, 2015, the husband filed a complaint in equity seeking reimbursement from the wife for his alleged overpayment of alimony between March of 2001 and September of 2014. The husband claimed the wife failed to provide him with accurate information regarding her Social Security benefits when she turned sixty-eight, resulting in total overpayments of $48,713.80. In her answer to the husband's complaint in equity, the wife admitted the husband had overpaid alimony but disputed the amount of overpayments, asserting the husband only overpaid by $42,004 between March of 2001 and September of 2014. The wife further asserted that, between 1986 and 2000, the husband had underpaid alimony by approximately $7,240. The wife also filed a counterclaim in equity, asserting the husband's life insurance obligation was not modifiable and requesting that the husband be required to place $100,000 in escrow, payable to the wife in the event he predeceased her. The contempt, modification, and equity matters were subsequently consolidated by the Probate and Family Court.
On March 4, 2015, the husband filed a motion for summary judgment on his complaint in equity, which the wife opposed. Following a hearing on March 20, 2015,[4] a judge of the Probate and Family Court allowed the husband's motion for summary judgment and entered a partial judgment finding the husband had overpaid alimony in the amount of $48,713.80 between March of 2001 and September of 2014. The remaining matters, including the wife's complaint for contempt, the husband's complaint for modification, and the wife's counterclaim in equity, were scheduled for trial.
A one-day trial was held on September 17, 2015.[5] On January 16, 2016, approximately four months after the trial concluded, the husband died. On January 28, 2016, the judge issued a final judgment (1) terminating the husband's alimony and life insurance obligations retroactive to November 13, 2014, the date of service of the husband's complaint for modification, and (2) requiring the wife to reimburse the husband in the amount of $48,713.80 by June 1, 2016.[6] The judge found the husband to be "totally disabled," thus warranting modification of his alimony obligation in accordance with the separation agreement. The judge further found the husband had "proven ... something more than a substantial change in circumstances" sufficient to modify his life insurance obligation. The judge specifically found the husband's life insurance policies with "Hutton and CNA" expired when he attained the age of seventy and one-half years, and "due to his health conditions[,] he is unable to pass a physical exam or qualify for new insurance." The judge expressly rejected the wife's claim that the husband's life insurance obligation was part of the property settlement, instead finding the life insurance was intended "to secure the payment of [the husband's] alimony obligation." The judge concluded the husband had "no continuing obligation to provide insurance" once his alimony obligation terminated, and the wife "suffered no harm from his failure to maintain insurance since his obligation was terminated while he was still alive." The present appeal by the wife followed.
Discussion. The wife principally challenges (1) the amount of alimony overpayments she is required to repay to the husband, and (2) the termination of the husband's life insurance obligation.[7] We address the wife's arguments in turn.
1. Alimony overpayments. The wife argues that the judge erred in allowing the husband's motion for summary judgment as there existed a genuine dispute regarding the amount of alimony overpayments made by the husband. We agree.
"The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." B.W. v. J.W., 67 Mass. App. Ct. 295, 297 (2006), quoting from Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). Here, the judge entered summary judgment in the husband's favor, finding he had overpaid alimony in the amount of $48,713.80 between March of 2001 and September of 2014. The judge noted that although the wife sought "offsets for amounts that she claims were underpaid prior to 2001, and claim[ed] that the [h]usband did not make all of his support payments between 2001 and 2014, she has not filed any [c]omplaints addressing those issues." We cannot fault the judge for declining to consider evidence of any alleged underpayments made prior to March of 2001, as the wife did not file a complaint seeking to recoup those amounts, and the husband's complaint in equity only sought reimbursement for overpayments made after March of 2001. That said, the precise alimony overpayment figure found by the judge of $48,713.80 was clearly erroneous as it included payments made by the husband prior to March of 2001. See Mass.R.Dom.Rel.P. 52(a) ("Findings of fact shall not be set aside unless clearly erroneous"); Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 636-637 (2010) (finding is "clearly erroneous" where it leaves reviewing court with "a definite and firm conviction that a mistake has been committed" [quotation omitted] ). The husband's own payment chart, submitted in support of his motion for summary judgment, lists total alimony overpayments of approximately $47,219 made between March of 2001 and September of 2014.[8] Moreover, the wife raised a genuine dispute of material fact regarding the amount of alimony overpayments alleged by the husband, asserting that he only overpaid by a total of $42,004.[9] "[V]iewing the evidence in the light most favorable to the [wife]," the husband was entitled to summary judgment only on the amount of overpayments conceded by the wife. B.W. v. J.W., 67 Mass. App. Ct. at 297. Accordingly, we vacate so much of the judgment as requires the wife to reimburse the husband for alimony overpayments above the amount of $42,004, and remand the matter for a limited evidentiary hearing on the remaining disputed amount of $5,215.
2. Life insurance. The wife next challenges the termination of the husband's life insurance obligation, claiming the judge (a) erred in interpreting the separation agreement, and (b) impermissibly modified the agreement's surviving life insurance provisions.
a. Interpretation of the separation agreement. "The interpretation of the separation agreement is a question of law, and is therefore 'afforded plenary review.' " Colorio v. Marx, 72 Mass. App. Ct. 382, 386 (2008), quoting from Judge Rotenberg Educ. Center, Inc. v. Commissioner of the Dept. of Mental Retardation (No. 1), 424 Mass. 430, 443 (1997). When interpreting a separation agreement, "[t]he objective is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose." Merrimack College v. KPMG LLP, 88 Mass. App. Ct. 803, 805 (2016), quoting from Sullivan v. Southland Life Ins. Co., 67 Mass. App. Ct. 439, 442 (2006).
Here, the wife argues the parties intended for the husband's life insurance obligation to be part of the property settlement, rather than a means of securing the husband's alimony obligation. However, a "fair reading" of the separation agreement does not support the wife's position, nor does it "raise a question as to the agreement's meaning such that reasonable minds might differ."Colorio v. Marx, supra at 388-389. Construing the separation agreement as a whole, it is apparent that the parties intended to secure the husband's alimony obligation with a $100,000 life insurance policy benefiting the wife. See Foster v. Hurley, 444 Mass. 157, 162 (2005) ("[W]e must construe the [separation] agreement in a manner that appears to be in accord with justice and common sense and the probable intention of the parties" [quotation omitted] ). "Any person with a support obligation to another party, whether it be for child support or alimony, is typically required to maintain life insurance on his or her life to secure the obligation in the event of his or her death." Kindregan, McBrien, & Kindregan, Family Law and Practice § 41:1 (4th ed. 2013). See G. L. c. 208, § 36. See also Braun v. Braun, 68 Mass. App. Ct. 846, 857 (2007) ("[A]n order for life insurance, and the payment of premiums thereon, may be seen as a component of alimony and other payment requirements" [quotation omitted] ). The husband's alimony and life insurance obligations are clearly interrelated, as the separation agreement provides identical grounds for their termination -- the wife's death, remarriage, or cohabitation "with an unrelated adult male in the style of a marriage for a period in excess of two years."[10] While the agreement does not expressly provide for the termination of life insurance if alimony terminates due to the husband's disability, the alternative interpretation advanced by the wife -- that the husband must maintain life insurance even when he no longer has an alimony obligation to secure -- is unreasonable. See Merrimack College v. KPMG LLP, supra at 806 ("The fact that [the wife's] preferred reading is linguistically possible does not make it a reasonable interpretation of the parties' agreement").
We are likewise unpersuaded by the wife's claim that the husband's life insurance obligation was part of the property settlement. "Unlike alimony, a property settlement is not subject to modification." Drapek v. Drapek, 399 Mass. 240, 244 (1987). Because the separation agreement expressly provides for the termination of life insurance under certain circumstances, the husband's obligation to maintain life insurance is, in essence, subject to modification. Moreover, the grounds for terminating life insurance under the separation agreement (the wife's death, remarriage, or cohabitation) are classic contingencies for the termination of alimony. See generally Bell v. Bell, 393 Mass. 20, 21-23 (1984), cert. denied, 470 Mass. 1027 (1985). See also Keller v. O'Brien, 420 Mass. 820, 823 n.4 (1995) ("This court has affirmed the termination of alimony payments on the recipient spouse's remarriage where the parties included automatic termination provisions in an agreement found to survive the divorce judgment"). Compare DuMont v. Godbey, 382 Mass. 234, 234 (1981) (death of husband did not bar wife's action to enforce property division); Earle v. Earle, 13 Mass. App. Ct. 1062, 1063 (1982) (wife's remarriage did not preclude her from obtaining property division in connection with prior marriage). Accordingly, we discern no error in the judge's conclusion that the husband's life insurance obligation was intended to secure his alimony obligation.
b. Modification. The wife further argues that the termination of the husband's life insurance obligation constituted an improper modification of a surviving separation agreement. We disagree.
"In reviewing a modification judgment, we examine whether the factual and legal bases for the decision are in error, or whether the judge otherwise abused his discretion." Flor v. Flor, 92 Mass. App. Ct. 360, 363 (2017).[11] "Where a separation agreement is incorporated in a divorce judgment but survives it and retains its force as an independent contract, the agreement is not an absolute bar to subsequent modification of the judgment." However, "something more than a material change of circumstances must be shown before a judge of the Probate Court is justified in refusing specific enforcement of that agreement." DeCristofaro v. DeCristofaro, 24 Mass. App. Ct. 231, 235 (1987) (quotation omitted).
Here, the judge found the husband established "something more" than a material change in circumstances as his previous life insurance policies expired when he attained the age of seventy and one-half years, and he was "unable to pass a physical exam or qualify for new insurance" coverage "due to his health conditions." The wife challenges these findings, claiming the husband was still maintaining other life insurance policies up until 2014, well after he attained age seventy and one-half years. However, the wife points to no evidence in the record, nor are we aware of any, establishing that the husband was able to obtain life insurance at the time of the trial in September of 2015. Indeed, the judge's findings and the record evidence suggest otherwise, given that the husband was eighty-two years old, suffered from "multiple physical issues that impact[ed] his daily ability to function," and required "a feeding tube to eat, drink and take his medication." Moreover, the judge's finding that the husband was unable to qualify for life insurance was based on her assessment of his credibility -- a finding that "is close to immune from reversal on appeal except on the most compelling of showings." Johnston v. Johnston, 38 Mass. App. Ct. 531, 536 (1995). There is nothing in the record that would compel us to disturb that credibility determination. In light of the husband's inability to obtain new life insurance at the time of trial, the judge was "justified in refusing specific enforcement" of the separation agreement's life insurance provisions. DeCristofaro v. DeCristofaro, supra at 235. See Capen v. Capen, 234 Mass. 355, 365 (1920) ("When it becomes impossible to afford specific performance of the entire contract, there may be relief as to a part of it under appropriate circumstances"). Accordingly, we affirm the termination of the husband's life insurance obligation retroactive to November 13, 2014.
Conclusion.[12] So much of the judgment dated January 28, 2016, as requires the wife to reimburse the husband for alimony payments over the amount of $42,004 is vacated, and the matter is remanded for further proceedings consistent with this memorandum and order. In all other respects, the judgment is affirmed. The order denying the wife's motion to stay is affirmed. Each party's request for appellate attorney's fees and costs is denied.
So ordered.
Vacated in part; affirmed in part.

"Said alimony payments shall continue until the [w]ife has attained the age of sixty-eight (68) years and thereafter, the [h]usband shall pay to the [w]ife as alimony the difference between the [S]ocial [S]ecurity benefits to which the [w]ife is entitled each month at the aforesaid age and the sum of $1,350."

A copy of the summary judgment hearing transcript was not included in the record appendix.

The husband was permitted to testify by video.

The judge found the wife had sufficient assets to repay the entire amount of alimony overpayments due to the husband.

The wife also appeals from the Probate and Family Court judge's order, dated August 22, 2016, denying her motion to stay. However, we decline to consider that challenge as the wife has failed to include a complete copy of her motion to stay in the record appendix. See Chokel v. Genzyme Corp., 449 Mass. 272, 279 (2007) ("It is [the appellant's] obligation to include in the record appendix any documents on which [s]he relies, [and] [w]hen a party fails to include a document in the record appendix, an appellate court is not required to look beyond that appendix to consider the missing document"). Moreover, the wife's initial brief contains no citations to legal authorities in support of her argument regarding the motion to stay. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975) ("The argument ... shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on"); K.A. v. T.R., 86 Mass. App. Ct. 554, 567 (2014) (court may decline to consider assertions which do not "rise to the level of reasoned appellate argument contemplated by Mass.R.A.P. 16 [a][4]"). While the wife has provided two legal citations in her reply brief, they are cited in support of a new argument regarding the motion to stay which the wife failed to raise in her initial brief. See O'Meara v. Doherty, 53 Mass. App. Ct. 599, 606 n.4 (2002) ("[A] party may not of right raise new contentions that could have been raised in her main brief").

The judge apparently relied on the husband's payment chart listing a total of $48,713.80 in overpayments made between January of 2001 and December of 2014. Excluding the payments made prior to March of 2001 and after September of 2014, the husband's chart lists total overpayments of $47,219.10.

The wife claimed the husband failed to make three monthly payments of $860 between 2005 and 2007. The wife also disputed the husband's claim that he paid $1,450 per month from March of 2001 through July of 2001, asserting that she only received $860 per month from the husband during that period.

The fact that the alimony and life insurance provisions are contained in separate sections of the agreement does not change their interrelated nature, as "[s]eparation [a]greements in divorce typically contain a separate exhibit devoted entirely to life insurance." Kindregan, McBrien, & Kindregan, Family Law and Practice § 41:1.

See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014), quoting from Picciotto v. Continental Cas. Co., 512 F.3d 9, 15 (1st Cir. 2008) ("[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made 'a clear error of judgment in weighing' the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives").

With respect to the wife's other arguments not addressed herein, they "have not been overlooked. We find nothing in them that requires discussion." Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).