JOHN BERNIER, individually and as next friend, & another[1] *vs.*
INEZ S. DUPONT, executrix,[2] & another.[3]

No. 97-P-687.

Worcester. May 14, 1999. - August 13, 1999.

Present: JACOBS, GILLERMAN, & GREENBERG, JJ.

*Probate Court,* Jurisdiction, Guardian ad litem. *Jurisdiction,* Probate Court, In
rem. *Will,* Allowance, Compromise.

A Probate Court judge correctly exercised in rem jurisdiction over the
administration of an estate, where the principal asset of the estate was real
property, eighty-nine per cent of the area of which was located within the
Commonwealth [574-575], and where the record demonstrated that,
notwithstanding that the decedent's dwelling place was discovered by a
survey three years after his death to be located in Connecticut, the decedent
intended to make his domicil in Massachusetts [575-576]; further, no other
reason appeared to deny jurisdiction to the Probate Court in the
circumstances [576-577].

No reason appeared, on the record of proceedings before the Probate Court on
a compromise will allowed in 1989, for this court to conclude that there
was any error in the judge's specific enforcement of the parties' agreement.
[577-578]

In a proceeding on a will in the Probate Court, the judge incorrectly excluded
evidence relevant to his determination of the counsel fees of the executrix,
and the matter was remanded for further proceedings and findings regard-
ing the account of the executrix. [578]

A judge of the Probate Court correctly declined to accept an offer of proof
regarding a litigant's "understanding" of a provision in a stipulation
modifying an agreement to compromise a will. [578]

The obligations, including the payment of interest, of a party to an agreement
to compromise a will were personal obligations not affected by the amount
of the proceeds realized from the sale of estate assets. [578-579]

This court declined to consider issues raised for the first time in an appellant's
reply brief in contravention of Mass.R.A.P. 16(c). [579]

PETITION for probate filed in the Worcester Division of the
Probate and Family Court Department on May 25, 1988.

---

[1]Katelyn Bernier, John Bernier's minor daughter.

[2]Under the will of Edward C. Bernier.

[3]Michael Bernier, Sr.

Motions to dismiss were heard by *William J. McManus,* J., and *Joseph Lian, Jr.,* J., respectively; motions with regard to an accounting by the executrix, and a complaint for specific performance, filed on April 5, 1995, were consolidated and heard by *Arline S. Rotman,* J., and a motion for relief from judgment was denied by her.

*Henry R. Simonelli, Jr.,* for the defendants.

*Kevin W. Sullivan* for the plaintiffs.

GILLERMAN, J. The defendant Inez S. DuPont, executrix under the will of Edward C. Bernier, has appealed from an order requiring her to pay $19,215.94, that being the total of the amounts disallowed on her first account. Her codefendant, Michael Bernier, Sr., has appealed from an order requiring the specific performance of his obligations under a stipulation signed by him and his brother John Bernier, the plaintiff. The stipulation is described below. The principal argument of the defendants is that the decedent was a resident of Connecticut, not Massachusetts, and therefore the Probate Court of Worcester County, where the compromise will of the decedent was allowed early in 1989, did not have "subject matter jurisdiction," and all proceedings in the Probate Court are a nullity.

The material facts, which we must set out in some detail, are not in dispute. Edward C. Bernier (decedent) died February 15, 1988. His estate was modest: a five and one-half acre tree farm which included a house and a barn valued in the inventory of the executrix at $92,600, and personal property which she valued at $41,814. The decedent's survivors included his sons, Michael and John, and the decedent's grandchildren, Katelyn and Michael Bernier, Jr.

The decedent's holographic will devised a two-acre lot to John, $10,000 to each grandchild, and the residuary estate to Michael. The will recited that the decedent was "of Lyons Road, Dudley, MA." The decedent's death certificate on file in the town of Dudley recites that the place of death was Dudley, that the decedent's residence was Dudley, that the decedent's occupation was "tree grower," and that the decedent was buried in Corbin Cemetery in Dudley. The decree of the Worcester Probate Court allowing the will recites that a petition for allowance of the will was filed by the defendant Inez S. DuPont (executrix), and that the decedent was "late of Dudley in said County of Worcester." We also note that the first account of the executrix reveals that real estate taxes were paid to the town of Dudley but none to any city or town in Con-

necticut, that estate taxes were paid to Massachusetts, and that sales taxes (due on sales of trees from the decedent's tree farm) were paid to Massachusetts.

The decedent's will at first was contested, but a compromise will was shortly agreed upon. The compromise will, which gave $20,000 to John, $41,200 to Katelyn in trust, $10,000 to Michael, Jr., and the residue to Michael, was proved and allowed in the Worcester Probate Court on April 26, 1989. The defendant DuPont was appointed executrix. The compromise agreement was soon in dispute but eventually was resolved (after an evidentiary hearing), through a written "Stipulation" dated April 17, 1991, signed by Michael and John. The stipulation amplified the compromise agreement. Amounts due the legatees under the stipulation were not paid, and John brought a motion seeking an order that all estate land be sold to pay amounts due him under the stipulation. The motion was allowed on August 27, 1991, and a commissioner was appointed to sell all estate land.

Of particular importance is that on or about June 9, 1991, a map and survey of the decedent's farm was prepared in connection with the contemplated offering of the farm for sale. The survey revealed that the total area of the farm, the principal asset of the estate, was 5.6233 acres of which 5.003 acres, or eighty-nine per cent, was in Massachusetts. The survey also showed that the decedent's house lay entirely within the State of Connecticut, and that only about one-half of the barn lay within Massachusetts.

On August 21, 1991, Michael brought a motion to dismiss under Mass.R.Civ.P. 12(b)(1), 365 Mass. 755 (1974) — "[l]ack of jurisdiction over the subject matter." The motion alleged that the decedent was domiciled in Connecticut at the time of his death and sought to dismiss all proceedings in the Worcester Probate Court. The motion was denied on August 27, 1991, the same day the judge ordered the sale of estate lands. Michael did not file a notice of appeal from the order denying his motion.[4]

On September 27, 1991, the executrix filed her first account.

---

[4]Michael could have filed a petition with a single justice of this court under G. L. c. 231, § 118, first par. In the alternative, Michael could have filed a notice of appeal with the full Appeals Court under G. L. c. 215, § 9, which permits any person aggrieved by an order of the Probate Court to appeal to the Appeals Court. Such an appeal may be dormant until the appeal from a "final" judgment or order. See *Borman* v. *Borman*, 378 Mass. 775, 778-780 (1979).

She made no claim — later to be asserted — that the court lacked "subject matter jurisdiction." John, for himself and Katelyn, filed his objections on October 30, 1991. One month later, John filed objections to the fees and costs paid to the executrix and to the attorney for the executrix who also appeared as counsel of record for Michael. The attorney has continued to represent both the executrix and Michael in this appeal.

On August 19, 1992, John filed a motion seeking an order requiring the attorney representing the executrix and Michael to submit a "Detailed Accounting and Documentation," and on August 25, 1992, the judge appointed a guardian ad litem for Katelyn. See G. L. c. 201, § 34.

On November 29, 1994, more than three years after the preparation of the map and survey for the farm, the executrix filed a rule 12(b)(1) motion which in substance was the same as the 1991 motion filed by Michael. The 1994 motion, signed by the same attorney who signed the 1991 motion on behalf of Michael, alleged that the Worcester Probate Court had no jurisdiction over the Bernier estate because the house in which the decedent lived lay in Connecticut. The motion sought the dismissal of all estate proceedings in the Probate Court.

On June 29, 1995, John, on behalf of himself and Katelyn, filed a complaint for the specific performance of the 1991 stipulation. This complaint was then consolidated with John's objections to the executrix's first account and his demand for a detailed accounting.

An evidentiary hearing followed, beginning December 18, 1995. At the outset of the hearing the attorney appearing of record as counsel to the executrix and Michael presented a motion for "Relief from Judgment or Order" seeking to dissolve the Probate Court's approval of the will to probate, the compromise agreement signed by John and Michael, and "all subsequent orders thereon."[5]

Counsel for the executrix acknowledged that he had not given

---

[5]Before the commencement of the testimony, the judge inquired of counsel whether he represented the executrix personally or the estate. Counsel replied that he represented the estate. The judge then asked whether there is "a conflict in representing the estate and a beneficiary." Counsel replied, "This is a residuary legatee [referring to Michael] . . . I don't think so." The judge accepted the answer. Counsel to John made no comment or objection, and we discuss the matter no further.

notice of the motion. Nevertheless, the colloquy continued. Counsel for John acknowledged that the decedent's farm was partly in Massachusetts and partly in Connecticut but indicated that the decedent "always viewed himself as a Massachusetts domiciliary." The judge observed that, as she recalled it, domicil is "where you have presently formed an intention to stay," but that she would be open to any argument that the Worcester Probate Court did not have subject matter jurisdiction. The judge then ordered the trial to continue on the issues presented by the objections to the first account and by the complaint for specific performance. There was testimony by the guardian ad litem and by Michael Bernier, and the trial ended. The motion for relief from judgment was denied on January 2, 1996.

The judge's findings of fact were dated January 2, 1996, and entered January 10, 1996. In brief, she found that there had been overpayments to the executrix and her attorney, and that Michael had failed to make the payments due the legatees as required by the stipulation. The judge ordered the executrix to pay the estate $19,215.94, this amount to be applied to the "amounts due John and Katelyn." She also ordered Michael to pay $28,171.45 to John Bernier and $66,468.95 to Katelyn.

The notice of appeal filed by the executrix and Michael states that the two defendants "appeal to the Appeals Court from the Judgment entered . . . on January 2, 1996." While the order entered on January 10, 1996 (which disposed of the first account and the complaint for specific performance), made no reference to the order denying the motion to dismiss filed by Michael on August 21, 1991, to the order denying the motion to dismiss filed by the executrix on November 25, 1994, or to the order denying the motion for relief from judgment filed again by the executrix on December 18, 1995, and denied on January 10, 1996, it implicitly reaffirmed these orders. John makes no claim that the issues contained in the various motions are not before us, and we will consider the merits of the motions.

1. *Michael's claim that, because the decedent's house was in Connecticut, the Probate Court lacked subject matter jurisdiction.* We start with the settled law that probate proceedings to settle an estate are "in rem," and "[a] state may exercise jurisdiction to determine interests in . . . [the assets of the estate] if the relationship of the . . . [assets of the estate] to the state is such that the exercise of jurisdiction is *reasonable.*" Restatement (Second) of Judgments § 6 & comment b (1982)

(emphasis added). See Restatement (Second) of Conflict of Laws § 56 (1971): "A state has power to exercise judicial jurisdiction to affect interests in a thing if the relationship of the thing to the state is such as to make the exercise of such jurisdiction reasonable." Thus the subject matter of the exercise of jurisdiction by the Worcester Probate Court is the administration of the assets and liabilities of the Bernier estate, and that jurisdictional assertion is permissible if the assets of that estate bear a reasonable relationship to the Commonwealth of Massachusetts.

In this case, the house and a portion of the barn were in Connecticut. Nevertheless, it was reasonable for Massachusetts to exercise in rem jurisdiction over the Bernier estate because (i) there is no suggestion in the record that the personal property of the estate was not in Massachusetts, and (ii) the principal asset of the estate was real property the overwhelming area of which (eighty-nine per cent) is within the Commonwealth. There is no requirement that *all* estate assets must be within the territorial limits of the State asserting primary in rem jurisdiction. See *Atherton* v. *Fitz Gibbon*, 346 Mass. 384, 387 (1963) (Massachusetts had jurisdiction to probate decedent's will "irrespective of whether primary probate would also have been proper in New York"). The Worcester Probate Court did not lack in rem jurisdiction.[6] Contrast *Cricenti* v. *Weiland*, 44 Mass. App. Ct. 785, 791 (1998).

General Laws c. 215, § 3, as appearing in St. 1975, c. 400, § 53, sets forth a limitation to the exercise of the power of the Massachusetts Probate Court to probate a decedent's will. That section provides that "Probate courts shall have jurisdiction of probate of wills . . . of persons who at the time of their decease were inhabitants of or residents in their respective counties. . . ." This statutory provision calls for an inquiry as to the

---

[6]Restatement (Second) of Judgments § 11 comment b (1982) recognizes that the term "subject matter jurisdiction" can "result in confusion." Compare *Scannell* v. *Ed. Ferreirinha & Irmao, Lda.*, 401 Mass. 155, 161-164 (1987) (discussing question whether Mass.R.Civ.P. 54[c], 365 Mass. 820 [1974], goes to the jurisdiction of the court or merely states a procedural constraint). Section 11 of the Restatement defines the term thus: "A judgment may properly be rendered against a party only if the court has authority to adjudicate the type of controversy involved in the action." In the case before us, the Worcester Probate Court obviously had the authority to administer the estates of deceased persons. See G. L. c. 215, § 3. For a recent decision of subject matter jurisdiction in which Justice Kaplan discusses the topic in the context of a late-filed appeal from an administrative decision, see *Covell* v. *Department of Social Servs.*, 42 Mass. App. Ct. 427, 430-433 (1997).

decedent's domicil. See *Slater* v. *Munroe,* 313 Mass. 538, 539 (1943). The question is whether the decedent intended to make his home in Massachusetts or Connecticut. See Restatement (Second) of Conflict of Laws § 18 (1971): "To acquire a domicile of choice in a place, a person must intend to make that place his home for the time at least."

We see no error of law in the denial by the Worcester Probate Court, on three occasions, of the defendants' challenge to the statutory jurisdiction of the Worcester Probate Court when the decedent, in his holographic will, described himself as being "of Dudley MA," when the decedent's death certificate states that the decedent's residence was in Dudley, when the probate decree allowing the will describes the decedent as being of Dudley, when, during his lifetime, the decedent paid local and State taxes to Massachusetts governmental units, and on the decedent's death inheritance taxes were paid to Massachusetts, and when the decedent during his lifetime resided on a tree farm eighty-nine per cent of the area of which was within Worcester County. See *id.,* comment h (where a farmer "all of whose tillable land, barn and out-buildings are situated in one political subdivision but the major portion of whose dwelling place is situated in another . . . his domicil of choice should be in the former division"). See also *Reiersen* v. *Commissioner of Rev.,* 26 Mass. App. Ct. 124, 131 (1988) (domicile is where the plaintiff intended to make "his home and the center of his business, social, and civic life").

In sum, when jurisdiction in rem is satisfied, and residence has been satisfactorily adjudicated, there remains no basis for the reversal of the denials of the defendants' various motions to dismiss.

There are additional facts which support the result we reach. The decedent's will, as modified by the compromise agreement, was proved and allowed ten years ago. The will admitted to probate was the product of compromise and agreement between Michael and John, each having the advice of counsel. Dismissing these proceedings, and possibly undoing that compromise and agreement, will propel the brothers into a fresh controversy, for Michael and the executrix seek to undo all that has been done. Most particularly, they seek to nullify the Massachusetts proceedings — not because there is any contractual defect in the compromise agreement or the stipulation which were voluntarily entered into, nor because of any claimed injury,

harm, or prejudice to any person because of the probate proceedings in Massachusetts rather than Connecticut — but because, if the ten-year proceedings are declared void, Michael will no longer be bound by his contractual obligations to John and Katelyn. No other purpose is suggested by Michael or the executrix, and we perceive none. Moreover, were we to order the dismissal of these ten year old proceedings, requiring the parties to start again in Connecticut, the resulting fees of the executrix and her attorney would likely reduce substantially what little there may be left of the estate. In a word, the result sought by Michael and the executrix would be highly prejudicial to John when, at the same time, an acceptable rationale, derived either from the jurisprudence of this Commonwealth or elemental considerations of fairness, is absent.

Finally, much of what has been done with the estate assets (including, it appears, the sale of the farm) cannot be undone. In matters involving the allowance (or compromise) of a will, a favorable decree after one year from the date of the decree shall be "final and conclusive in favor of [bona fide] purchasers for value" of the real or personal property of the estate. See G. L. c. 192, § 3.

Absent overriding and persuasive objections from the State of Connecticut, we know of no sound reason for insisting on the denial of the authority of the Worcester Probate Court to administer the Bernier estate on the facts of this case. We decline, therefore, to reverse the decision to retain jurisdiction of this estate.

2. *Various arguments of the defendants.* We deal briefly with the remaining arguments of Michael and the executrix. The appointment of the guardian ad litem was authorized by G. L. c. 201, § 34. The matter is one of discretion, see Rule 5 of the Rules of the Probate Court (1990), and we see no abuse of that discretion here.

The defendants argue that the judge erred in "crediting the guardian ad litem's report." In fact, the guardian litem testified at length in the trial before the judge. There was no error.

The defendants argue that the judge erred in enforcing the stipulation signed by Michael and John. There was no error. Pursuant to G. L. c. 215, § 6, the Probate Court has general equity jurisdiction. *Young* v. *Department of Pub. Welfare,* 416 Mass. 629, 633 (1993). It is settled law that compromise agreements are specifically enforceable. *Ross* v. *Friedman,* 22 Mass. App. Ct. 513, 516 (1986). Here the compromise agreement was

amplified by the stipulation, and the compromise agreement, as modified by the stipulation, became specifically enforceable.

Counsel to the executrix (and Michael) argues that the judge erred in not permitting him to testify regarding the fees he charged to the executrix. See note 5, *supra*. One of the matters at issue was the first account of the executrix. In particular, John had challenged the propriety of the fees charged by counsel to the executrix.

Counsel to the executrix should have been allowed to testify. See Mass.R.Prof.C. 3.7(a)(2), 426 Mass. 1396 (1998): a lawyer who appears as an advocate at a trial may testify if his "testimony relates to the nature and value of legal services rendered in the case." Here, the only person who could testify, as of his own personal knowledge, regarding the details of his work for the executrix was counsel to the executrix. His exclusion was error, and in view of the judge's decision disallowing a material portion of counsel fees, the error was prejudicial to the rights of counsel and to the executrix. There must be further proceedings on the issue of the propriety of the expenses of the executrix for counsel fees.

The judge did not err in declining to accept an offer of proof from Michael's counsel as to what Michael would testify to, if permitted, regarding his, Michael's, understanding of paragraph 5(d) of the stipulation, which provides that the sums due John include "all costs and attorney's fees incurred as of May 26, 1989, including any and all ongoing costs and attorney's fees until all said money, including interest, costs and attorney's fees are paid." The judge was not required to consider Michael's unexpressed "understanding" in applying the provisions of paragraph 5(d).

Michael argues that the stipulation "contemplated" that the estate property "would be sold" and the proceeds distributed. However, the argument continues, a commissioner was appointed August 27, 1991, to sell the property the effect of which was to render Michael unable to perform his obligation under the stipulation. For that reason, Michael claims, interest should not accrue after August 27, 1991, as otherwise provided in the stipulation. We disagree.

The stipulation, which is dated April 17, 1991, provides that Michael and his attorney will immediately "make efforts to sell and/or auction estate property." If the property was not sold by July 17, 1991, then the parties agreed that "on July 17,

1991, the court will order that all estate land be sold at auction to pay" all amounts due John and Katelyn. On August 14, 1991, John filed a motion to enforce the stipulation, asking that a commissioner be appointed to sell all estate land at auction. The petition was allowed on August 27, 1991, and on the same day a commissioner was appointed to sell "all estate land at public auction." Michael being in default of his obligations under the stipulation, and no explanation or excuse being offered in response, we conclude that there was no error in the calculation of interest.

Michael argues that the order of January 2, 1996, is impossible of performance because the order enjoins Michael from selling "his assets" thereby making the sale of estate lands impossible. The commissioner was given the authority and direction to sell the estate lands at public auction, however, and should do so. Michael's obligations under the stipulation to make the payments described therein are his personal obligations not limited by the proceeds of the sale of the estate land.

The defendants' reply brief raises new issues[7] and therefore is not confined to a "reply to the brief of the appellee" as required by Mass.R.A.P. 16(c), 365 Mass. 861 (1974). See *Assessors of Boston* v. *Ogden Suffolk Downs, Inc.*, 398 Mass. 604, 608 n.3 (1986).

There was no error in the orders denying the various motions to dismiss or the order denying the motion for relief from judgment. The order entered on January 10, 1996, relating to the accounting by the executrix is vacated, and the case is remanded to the Probate Court for further proceedings regarding the first account of the executrix consistent with this opinion, following which there shall be new or supplemental findings, and a new or supplemental order regarding the objections to the accounting of the executrix. The portion of the order regarding the complaint for the specific performance of the stipulation dated April 17, 1991, is affirmed.

*So ordered.*

---

[7] The arguments that the compromise will did not comply with certain statutory provisions, and that the judge's findings are not supported by the evidence, were raised for the first time in the defendants' reply brief.