MARIANNE AJEMIAN, coadministrator,[1] & another[2] *vs.*
YAHOO!, INC.

No. 12-P-178.

Norfolk. October 1, 2012. - May 7, 2013.

Present: WOLOHOJIAN, BROWN, & CARHART, JJ.

*Internet. Res Judicata. Judgment,* Preclusive effect. *Contract,* Choice of forum
clause, Third party beneficiary. *Jurisdiction,* Forum non conveniens, Probate
Court, In rem. *Practice, Civil,* Choice of forum. *Limitations, Statute of.
Probate Court,* Jurisdiction.

In a civil action brought by the administrators of an estate (plaintiffs), seeking
a declaration that electronic mail messages that the decedent sent and
received using an account administered by the defendant were property of
the decedent's estate, the judge erred in concluding that the action was
barred by the doctrine of res judicata, where, in a prior action, the parties
had agreed that, in exchange for the plaintiffs' agreement not to litigate the
estate's entitlement to the contents of the messages, the defendant agreed
not to oppose the plaintiffs' request for an order requiring production only
of basic subscriber information and certain information related to such
messages. [571-573]
This court concluded that the principles applicable to the enforceability of
forum selection and statute of limitations clauses in traditional paper
contracts apply to online agreements. [573-575]
This court concluded that forum selection and statute of limitations clauses
contained in an online terms of service agreement between the plaintiffs'
decedent and the defendant, the administrator of an electronic mail mes-
sage service, were not enforceable in a civil action brought by the plaintiffs,
the administrators of the decedent's estate, seeking a judgment declaring
that the electronic mail messages that the decedent sent and received via
the defendant's service were property of the decedent's estate, where the
record did not reflect that the provisions of the terms of service agreement
had reasonably been communicated or that they had been accepted
[575-576]; and where, in any event, it was not reasonable to enforce the
forum selection and limitations clauses against the plaintiffs, given that the
plaintiffs were not parties to the agreement, nothing in the record sug-
gested that jurisdiction over the assets of the decedent's estate lay anywhere

---

[1] Of the estate of John Ajemian.

[2] Robert Ajemian, individually and as coadministrator of the estate of John
Ajemian.

other than Massachusetts, the nature of the action gave the defendant only a slight interest in applying the forum selection and limitations clauses, and the forum selection clause was unreasonably broad [576-580].

This court declined to consider an argument that did not rise to the level of acceptable appellate argument. [580]

COMPLAINT filed in the Norfolk Division of the Probate and Family Court Department on September 15, 2009.

A motion to dismiss was heard by *John D. Casey*, J.

*Robert L. Kirby, Jr.*, for the plaintiffs.

*Marc J. Zwillinger*, of the District of Columbia (*Hanson S. Reynolds* with him) for the defendant.

WOLOHOJIAN, J. The plaintiffs, who are coadministrators of their brother John's estate, brought the underlying declaratory judgment action in the Probate and Family Court, seeking a declaration that electronic mail messages (e-mails) John sent and received using a Yahoo!, Inc. (Yahoo!), e-mail account are property of his estate.[3] A probate judge dismissed the complaint, concluding that a forum selection clause required that suit be brought in California. The judge also concluded that res judicata barred the administrators from bringing their claim in a Massachusetts court, but did not bar them from asserting the same claim in California. In light of those conclusions, the judge dismissed the suit (apparently without prejudice), stating that the parties' substantive arguments should be considered by the California courts. We reverse.

*Background.* The parties briefed and argued the motion to dismiss as though it were a motion for summary judgment, submitting multiple documents and affidavits in support of their respective positions and liberally referring to information outside the four corners of the complaint. The judge considered and relied upon those extrinsic materials when ruling on the motion. In these circumstances, although never expressly converted, Yahoo!'s motion to dismiss was in effect a motion for summary judgment, and we accordingly review the judge's dismissal order under our familiar summary judgment standard. See Mass. R.Civ.P. 12(b), 365 Mass. 754 (1974); *Cousineau* v. *Laramee*,

---

[3]We refer to the Ajemian siblings by their first names to avoid confusion.

388 Mass. 859, 860 n.2 (1983); *Casavant* v. *Norwegian Cruise Line, Ltd.*, 63 Mass. App. Ct. 785, 791 (2005), cert. denied, 546 U.S. 1173 (2006); *Rawan* v. *Massad*, 80 Mass. App. Ct. 826, 828 (2011). Viewed through that lens, we recite the relevant factual and procedural background.

Around August or September, 2002, Robert opened a Yahoo! e-mail account for John. Although Robert opened the account to be used primarily by John, Robert was to have access to and share the account as a co-user. Robert provided the information requested by Yahoo! to open the account, and he also set up a password to access the account.

According to Yahoo!, "[p]rospective users are given an opportunity to review the Terms of Service and Privacy Policy [TOS] prior to submitting their registration data to Yahoo!." Robert does not dispute this, but avers that he has no affirmative memory of accepting the TOS or of seeing or reading it when he opened the account. The printed version of the TOS in effect in 2002 when Robert opened the account (2002 TOS) is ten single-spaced pages long and consists of twenty-five numbered sections. Of those, the following sections are particularly pertinent to this appeal.

> "1. ACCEPTANCE OF TERMS[.] "Welcome to Yahoo!. Yahoo provides its service to you, subject to the following Terms of Service ('TOS'), which may be updated by us from time to time without notice to you . . . .[4]
>
> ". . .
>
> "6. MEMBER CONDUCT[.] . . . You acknowledge and agree that Yahoo may preserve Content[5] and may also disclose Content if required to do so by law or in the good faith belief that such preservation or disclosure is reasonably necessary to: (a) comply with legal process; [or] (b) enforce the TOS . . . .

---

[4] Section 1 continues: "You can review the most current version of the TOS at any time at: http://docs.yahoo.com/info/terms/. In addition, when using particular Yahoo services, you and Yahoo shall be subject to any posted guidelines or rules applicable to such services which may be posted from time to time. All such guidelines or rules are hereby incorporated by reference into the TOS."

[5] "Content" is defined as "all information, data, text, software, music, sound, photographs, graphics, video, messages or other materials."

" . . .

"8. CONTENT SUBMITTED OR MADE AVAILABLE FOR INCLUSION ON THE SERVICE[.] Yahoo does not claim ownership of Content you submit or make available for inclusion on the Service. . . .

" . . .

"13. TERMINATION[.] You agree that Yahoo, in its sole discretion, may terminate your password, account (or any part thereof) or use of the Service, and remove and discard any Content within the Service, for any reason, including, without limitation, for lack of use . . . .

" . . .

"16. YAHOO'S PROPRIETARY RIGHTS[.] . . . Yahoo grants you a personal, non-transferable and non-exclusive right and license to use the object code of its Software on a single computer. . . .

" . . .

"24. GENERAL INFORMATION[.] . . . The TOS and the relationship between you and Yahoo shall be governed by the laws of the State of California without regard to its conflict of law provisions. You and Yahoo agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Santa Clara, California. . . . You agree that regardless of any statute or law to the contrary, any claim or cause of action arising out of or related to use of the Service or the TOS must be filed within one (1) year after such claim or cause of action arose or be forever barred."

John was struck and killed by a motor vehicle on August 10, 2006. At that time, there was a new version of the TOS in effect. Most of the provisions set out above were materially unchanged; however, there were at least two new sections:

"22. NO THIRD-PARTY BENEFICIARIES. You agree that, except as otherwise expressly provided in this TOS, there shall be no third-party beneficiaries to this agreement.

". . .

"26. GENERAL INFORMATION[.] . . . *No Right of Survivorship and Non-Transferability.* You agree that your Yahoo! account is non-transferable and any rights to your Yahoo! ID or contents within your account terminate upon your death. Upon receipt of a copy of a death certificate, your account may be terminated and all contents therein permanently deleted."

The record is silent on whether, how, or when the amendments to the TOS were communicated to, or accepted by, Robert (or John) or, for that matter, any other Yahoo! user. Based on Section 1 of the 2002 TOS (see note 4, *supra*), it appears that Yahoo! may not have communicated this later TOS to users, or obtained their acceptance, but instead expected users on their own initiative to find out whether the terms of service had changed.

As noted above, Robert opened the account for John, who then became its primary user. However, Robert states that he was a coowner of the account and continued to access the account from time to time. That said, he had not accessed the account for some period before John's death and had forgotten the password.

Beginning shortly after John's death, the plaintiffs have repeatedly tried to gain access to the e-mail account. Initially, they sought access in order to obtain the e-mail addresses of John's friends to notify them of his death and memorial service. Subsequently, the plaintiffs (by then appointed as coadministrators of John's estate) sought the e-mails to help identify and locate assets and administer John's estate. Although Yahoo! initially agreed to turn over the information provided the family produced a copy of John's birth and death certificates and other documentation, it later refused them access to the account or its contents, relying on the Stored Communications Act, 18 U.S.C. §§ 2701 et seq. (2006), which Yahoo! interpreted to preclude disclosing John's e-mails even to the administrators of his estate.

Further negotiations led the parties to reach a partial resolution to the effect that if the plaintiffs obtained a valid court order requiring only production of basic subscriber and e-mail

header information,[6] and the order did not require Yahoo! to produce the contents of the e-mails, then Yahoo! would not oppose issuance of such an order and would comply with it. No agreement was reached regarding the contents of the e-mails, except that Yahoo! would continue to preserve them.

Consistent with this agreement, the plaintiffs filed a declaratory judgment action in the Probate and Family Court in September, 2007 (first action), seeking only "a binding declaration of right that the Administrators are entitled to access the subscriber records for the [e-mail] account," and an order that Yahoo! produce the subscriber records for that account.[7] The complaint did not seek the contents of the e-mails themselves. The complaint informed the court of the terms of the agreement between the plaintiffs and Yahoo! as set out above. Yahoo! did not appear in the first action, nor did it oppose the relief sought. Accordingly, the plaintiffs filed an unopposed motion for summary judgment, together with a proposed form of judgment, which a probate judge entered on January 3, 2008. That order provided:

> "1. The Administrators of the estate of John Gerald Ajemian, Marianne Ajemian and Robert Ajemian, are entitled to receive subscriber records, as specified below, for Yahoo! e-mail account 'jajemian__1@yahoo.com.'

> "2. Yahoo! Inc. shall provide all subscriber records and e-mail header information, not to include e-mail content, for Yahoo! e-mail account 'jajemian__1@yahoo.com' to the Administrators . . . ."

Yahoo! produced the subscriber information pursuant to the judgment.

Thereafter, the plaintiffs renewed their requests for the contents of the e-mail account. The parties engaged in further negotiations for several months but reached no agreement, and therefore, the plaintiffs filed a second declaratory judgment action in the

---

[6]The header information contains the names and addresses of the senders and recipients, the date, and the information reflected in the subject line of the e-mail.

[7]The plaintiffs understood the first action to be an "intermediate step in the good faith hope of averting further litigation about email content."

Probate and Family Court on September 15, 2009 (second action), which is the suit underlying this appeal.

Unlike the first action, the second action is brought not only by Robert and Marianne as administrators of John's estate, but also by Robert individually, based on his allegation that he is a coowner of the e-mail account. The complaint seeks access to the contents of the e-mail account on two theories: (1) that the e-mails are property of John's estate and, therefore, Marianne and Robert (as the estate's administrators) are entitled to access to them; and (2) that as coowner of the account, Robert individually is entitled to its contents.

Yahoo! moved to dismiss the second action on four grounds: (1) the forum selection clause in the TOS required that the suit be brought in California; (2) the suit was untimely given the one-year statute of limitations in the TOS; (3) the doctrine of res judicata barred the action; and (4) the complaint failed to state a claim upon which relief could be granted because e-mails in the account are not property of the estate. A different probate judge allowed the motion, finding that the first action barred the second action under the doctrine of res judicata. Despite this determination, the judge also ruled that the forum selection clause was enforceable and that the case should be dismissed without prejudice to its being refiled in California, and that the California courts should decide whether the suit was time barred and whether the e-mails were the property of the estate. This appeal ensued.

*Discussion.* 1. *Res judicata.* We must resolve, as a threshold matter, whether the judge properly determined that the second action was barred by the doctrine of res judicata.[8] "The term 'res judicata' includes both claim preclusion and issue preclusion." *Kobrin* v. *Board of Registration in Med.*, 444 Mass. 837, 843 (2005). Claim preclusion operates where there is "(1) the identity or privity of the parties to the present and prior actions,[9] (2) identity of the cause of action, and (3) prior final judgment on the merits." *Ibid.*, quoting from *Delacruz* v. *Depart-*

---

[8]Because we conclude that res judicata does not bar the second action, we need not evaluate the judge's view that res judicata operated only to bar pursuing the claims in Massachusetts.

[9]Deciding as we do, we do not need to reach the question whether the parties

*ment of Correction*, 434 Mass. 40, 45 (2001). Causes of action are considered identical for these purposes if they are based on "the same transaction, act, or agreement, and seek[] redress for the same wrong." *Fassas* v. *First Bank & Trust Co. of Chelmsford*, 353 Mass. 628, 629 (1968), quoting from *Mackintosh* v. *Chambers*, 285 Mass. 594, 596 (1934). The doctrine bars "relitigation of all matters that were or could have been adjudicated in the [earlier] action." *Kobrin* v. *Board of Registration in Med.*, *supra*, quoting from *O'Neill* v. *City Manager of Cambridge*, 428 Mass. 257, 259 (1998).

Yahoo! argues that the judgment entered in the first action bars the second action because the estate's entitlement to the contents of the e-mail account could have been litigated in the first action when the plaintiffs sought — and obtained — an unopposed order (reflected in a final judgment) requiring production of the e-mail header information. Yahoo!'s argument requires us to ignore the fact that the piecemeal adjudication of the estate's entitlement to the e-mail account resulted from an agreement among the parties. In exchange for the plaintiffs' agreement to hold off litigating their entitlement to the contents of the e-mail account, Yahoo! agreed not to oppose the estate's request for an order requiring production only of the header information. Cf. *Roche* v. *Roche*, 22 Mass. App. Ct. 306, 311 (1986) ("There would be something anomalous about giving a defendant the benefit of claim preclusion when that defendant took steps calculated to assure the exclusion of the claim from the prior litigation"). The estate's claim to the contents of the e-mail account could not have been litigated in the first action without violating the parties' agreement.

It makes no sense to apply the doctrine of claim preclusion in these circumstances. Indeed, a conclusion to the contrary would undermine the many benefits and advantages of encouraging parties to narrow their disputes on their own before submitting others to the court for resolution. The estate's entitlement to the contents of the e-mails was never at issue in the first action — indeed, it was carved out from the complaint, which explicitly

were identical between the two actions. Although Robert and Marianne (as administrators) were the same, in the second action, Robert also brought claims individually.

stated that the suit was brought for the limited purpose of obtaining the order Yahoo! stated it required before producing the header information.[10,11]

Because the probate judge determined that the second action was barred by res judicata, he did not reach any of Yahoo!'s remaining grounds for dismissing the complaint. Those were, as noted above, that the forum selection clause in the TOS required that the suit be brought in California; the action was untimely given the one-year limitations restriction in the TOS; and the complaint failed to state a claim upon which relief could be granted because e-mails in the account are not property of the estate. We turn to those issues.

2. *Enforceability of forum selection and limitations clauses.* Our courts have not had occasion to consider the enforceability of forum selection and limitations clauses in online agreements. We have, however, considered the enforceability of such provisions in traditional paper contracts. In those cases, following the modern rule of reasonableness articulated in *Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1 (1972), we have held that such clauses will be enforced provided they have been reasonably communicated and accepted and if, considering all the circumstances, it is reasonable to enforce the provision at issue. See *Jacobson* v. *Mailboxes Etc. U.S.A., Inc.*, 419 Mass. 572, 574-575 (1995)

---

[10]Moreover, as Yahoo! commendably acknowledged at oral argument, had the plaintiffs in the first action instead obtained a subpoena for the same information (an avenue equally available to them), claim preclusion would not apply. The fact that the plaintiffs instead obtained an agreed-upon order (reflected in a judgment) in the first action should not by itself operate to bar their later claim for the contents of the e-mail account, particularly where there had been no adjudication of the merits.

[11]We rest our decision that the second action was not barred by claim preclusion on the discussion set out above. We note, however, a further reason why claim preclusion may not apply in this case. Although not yet decided by the Supreme Judicial Court, there is authority for the principle that claim preclusion does not operate to bar issues that were not actually litigated in declaratory judgment actions. "[A] declaratory action determines only what it actually decides and does not have a claim preclusive effect on other contentions that might have been advanced." Restatement (Second) of Judgments § 33 & comment c (1982). See *Andrew Robinson Intl., Inc.* v. *Hartford Fire Ins. Co.*, 547 F.3d 48, 55 (1st Cir. 2008) (stating that "Massachusetts cases strongly suggest that . . . the [Supreme Judicial Court] will adopt the articulation of claim preclusion principles limned in section 33 of the Second Restatement").

(involving forum selection clause in franchise agreement); *Creative Playthings Franchising, Corp.* v. *Reiser*, 463 Mass. 758, 759-760, 763 (2012) (involving limitations clause in commercial contract); *Casavant* v. *Norwegian Cruise Line, Ltd.*, 63 Mass. App. Ct. at 788-790 (involving forum selection clause in passenger ticket); *Baby Furniture Warehouse Store, Inc.* v. *Meubles D&F Ltée*, 75 Mass. App. Ct. 27, 32 (2009) (involving forum selection clause in commercial contract). The burden is on Yahoo! to demonstrate that the forum selection and limitations clauses in the TOS were reasonably communicated and accepted, but the plaintiffs bear the "substantial burden" to demonstrate that enforcement of the forum selection clause is unreasonable in the circumstances. *Melia* v. *Zenhire, Inc.*, 462 Mass. 164, 182 (2012). Our cases do not reflect that the plaintiffs have the same burden with respect to the limitations provision. See *Creative Playthings Franchising, Corp.* v. *Reiser, supra* at 763.

We see no reason to apply different legal principles simply because a forum selection or limitations clause is contained in an online contract.[12] Accordingly, on summary judgment below, Yahoo! had the burden of establishing, on undisputed facts, that the provisions of the TOS were reasonably communicated and accepted. "Reasonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to

---

[12]Our own survey of cases from other jurisdictions convinces us that the pertinent legal principles do not change simply because a contract was entered into online. Other jurisdictions uniformly require proof that the terms of an online agreement be reasonably communicated and accepted. See *O'Brien* v. *Okemo Mountain, Inc.*, 17 F. Supp. 2d 98, 103 (D. Conn. 1998) ("As a threshold matter, the validity of a forum selection clause . . . depends on whether the existence of the clause was reasonably communicated to the plaintiff"); *Harris* v. *Comscore, Inc.*, 825 F. Supp. 2d 924, 926 (N.D. Ill. 2011) ("[A] forum-selection clause is enforceable only if its existence 'was reasonably communicated to the plaintiff' "); *Bagg* v. *Highbeam Research, Inc.*, 862 F. Supp. 2d 41, 46-47 (D. Mass. 2012) (denying summary judgment because record did not establish acceptance of "clickwrap" agreement containing forum selection clause). Likewise, other jurisdictions uniformly apply a test of reasonableness to determine whether a forum selection provision in an online agreement is enforceable. See, e.g., *Hughes* v. *McMenamon*, 204 F. Supp. 2d 178, 181 (D. Mass. 2002); *Bagg* v. *Highbeam Research, supra* at 45; *Forrest* v. *Verizon Communications, Inc.*, 805 A.2d 1007, 1011-1012 (D.C. 2002).

those terms by consumers are essential if electronic bargaining is to have integrity and credibility." *Specht* v. *Netscape Communications Corp.*, 306 F.3d 17, 35 (2d Cir. 2002). Furthermore, Yahoo! had the burden of demonstrating that enforcement of the limitations provisions is reasonable. In contrast, the plaintiffs bore the burden of showing that it would be unreasonable in the circumstances to enforce the forum selection provision. We review the allowance of the motion under the familiar standard. See *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991); *St. George Greek Orthodox Cathedral of W. Mass., Inc.* v. *Fire Dept. of Springfield*, 462 Mass. 120, 123 (2012).

a. *Were the provisions of the TOS reasonably communicated and accepted?* Our first inquiry is whether the undisputed facts establish that the provisions of the 2002 and amended TOS were reasonably communicated to the plaintiffs. We conclude that they do not. The only information on this point is Yahoo!'s affidavit stating that "[p]rospective users are given an opportunity to review the Terms of Service and Privacy Policy prior to submitting their registration data to Yahoo!." Standing alone, this is not enough to establish that the forum selection provision and limitations provision of either the 2002 or the amended TOS were reasonably communicated, or to whom they were communicated. We do not know, and cannot infer, that the provisions of the 2002 TOS were displayed on the user's computer screen (in whole or in part). It is equally likely, given how the affidavit is phrased, that the user was expected to follow a link to see the terms of the agreement. If that was the case, the record would need to contain information concerning the language that was used to notify users that the terms of their arrangement with Yahoo! could be found by following the link, how prominently displayed the link was, and any other information that would bear on the reasonableness of communicating the 2002 TOS via a link.

Our second inquiry is whether the record established that the provisions of the TOS were accepted and, if so, the manner of acceptance. There is a complete failure of the record in this regard. Yahoo! submitted nothing to establish whether or how the provisions of the 2002 TOS were accepted by John or how the provisions of the amended TOS were accepted by John or

Robert, or how they manifested their assent. "Without clear evidence that Plaintiffs assented to an agreement that contained a forum selection clause, this court cannot enforce any such clause." *Bagg* v. *Highbeam Research, Inc.*, 862 F. Supp. 2d 41, 44 (D. Mass. 2012) (denying summary judgment where no acceptance shown to forum selection clause contained in "clickwrap" agreement).

Although forum selection clauses contained in online contracts have been enforced, courts have done so only where the record established that the terms of the agreement were displayed, at least in part, on the user's computer screen and the user was required to signify his or her assent by "clicking" "I accept." See *Hughes* v. *McMenamon*, 204 F. Supp. 2d 178, 181 (D. Mass. 2002), and cases collected; *Siebert* v. *Amateur Athletic Union of the United States, Inc.*, 422 F. Supp. 2d 1033, 1040 (D. Minn. 2006); *Segal* v. *Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011); *Fteja* v. *Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012). This is known as a "clickwrap" agreement. See *id.* at 838 (clickwrap agreement typically requires users to click "I agree" box after being presented with terms of agreement). By contrast, a "browsewrap" agreement is one "where website terms and conditions of use are posted on the website typically as a hyperlink at the bottom of the screen." *Id.* at 836, quoting from *Hines* v. *Overstock.com, Inc.*, 668 F. Supp. 2d 362, 366 (E.D.N.Y. 2009). Although forum selection clauses have almost uniformly been enforced in clickwrap agreements, we have found no case where such a clause has been enforced in a browsewrap agreement. Here, the record does not establish that the TOS was a clickwrap agreement, or that terms of the TOS were displayed (in whole or part) to Robert or John, or that the terms were accepted by clicking "I accept" or by taking some similar action. As a result, the record does not reflect that the terms of any agreement were reasonably communicated or that they were accepted.

b. *Is it reasonable to enforce the forum selection and limitations clauses against the administrators of John's estate?* Even were we to assume that the provisions of the 2002 TOS and amended TOS were reasonably communicated to Robert when

he opened the account,[13] that Robert accepted the provisions of the 2002 TOS and manifested his acceptance in some legally cognizable fashion, and that Robert was acting as John's agent when he accepted the provisions of the 2002 TOS and, as a result, John should be bound by it, see *Adsit Co.* v. *Gustin*, 874 N.E.2d 1018, 1023-1024 (Ind. Ct. App. 2007) (agent can bind principal to forum selection clause in online contract by clicking "I accept" where agent had actual authority), we could not fairly conclude that it was reasonable to enforce the forum selection and limitations clauses against the administrators of John's estate. In forming our opinion, we have considered the following factors that bear on the issue of reasonableness.

(i) *The administrators are not parties to the contract.* The only parties to the TOS are "you" and Yahoo!. The term "you" is undefined and we can see no reasonable construction of it that would extend to the administrators of John's estate.[14] The most natural construction of the term is that it refers to the person who accepted the TOS. To the extent that the term is ambiguous, it is to be construed against Yahoo! as the drafter of the contract. See, e.g., *Costa* v. *Brait Builders Corp.*, 463 Mass. 65, 76 (2012). Yahoo! controlled the provisions of the TOS and it would have been a simple matter for it to define the parties to the contract to include estates, administrators, executors, successors and the like had that been Yahoo!'s intent. We see no reason to add those terms now.

We have found no Massachusetts case enforcing a forum selection clause or a limitations clause against a nonsignatory to the contract. However, courts in other jurisdictions have generally accepted that nonsignatory third parties can be bound where the nonparty is sufficiently closely related to a signatory that it is foreseeable that the nonsignatory will be bound. See, e.g., *Hugel* v. *Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993); *BNY AIS Nominees Ltd.* v. *Quan*, 609 F. Supp. 2d 269, 275 (D. Conn. 2009); *Synthes, Inc.* v. *Emerge Medical, Inc.*,

---

[13]There was no information concerning the amended TOS, either with respect to its communication to users or the method of their acceptance.

[14]Under certain circumstances not presented by the record in this case, administrators may be bound by contractual terms agreed to by the decedent. See *Kowal* v. *Sportswear by Revere, Inc.*, 351 Mass. 541, 544 (1967).

887 F. Supp. 2d 598, 607 (E.D. Pa. 2012). "One situation where a non-party may invoke a contractual forum selection clause, or it can be invoked against the non-party, is where the non-party is a third-party beneficiary of the contract." *BNY AIS Nominees Ltd.* v. *Quan, supra.* "[A] benefitting third party is not necessarily a third-party beneficiary." *Intergen N.V.* v. *Grina,* 344 F.3d 134, 147 (1st Cir. 2003) (refusing to bind third party to arbitration clause because third party was not third-party beneficiary of contract). "Under Massachusetts law, a contract does not confer third-party beneficiary status unless the 'language and circumstance of the contract' show that the parties to the contract 'clear[ly] and definite[ly]' intended the beneficiary to benefit from the promised performance." *Doherty* v. *Admiral's Flagship Condominium Trust,* 80 Mass. App. Ct. 104, 111 (2011), quoting from *Cumis Ins. Soc., Inc.* v. *BJ's Wholesale Club, Inc.,* 455 Mass. 458, 466 (2009). It is clear from the provisions of the TOS that the administrators are not intended third-party beneficiaries. Among other things, the TOS specifies that the agreement grants a nontransferable license only to the person accepting the TOS. The administrators are not entitled to any of the benefits or rights under the TOS: they are not entitled to use Yahoo!'s e-mail service or to use the e-mail account opened by Robert. Yahoo! itself takes the position that the administrators have no rights under the contract.

(ii) *Jurisdiction.* The complaint seeks from the Probate and Family Court only a declaration whether John's e-mails are property of his estate. It is "settled law that probate proceedings to settle an estate are 'in rem,' and '[a] state may exercise jurisdiction to determine interests in . . . [the assets of the estate] if the relationship of the . . . [assets of the estate] to the state is such that the exercise of jurisdiction is *reasonable*' " (emphasis added). *Bernier* v. *DuPont,* 47 Mass. App. Ct. 570, 574-575 (1999), quoting from Restatement (Second) Judgments § 6 & comment b (1982). "A state has power to exercise judicial jurisdiction to affect interests in a thing if the relationship of the thing to the state is such as to make the exercise of such jurisdiction reasonable." *Id.* at 575, quoting from Restatement (Second) of Conflict of Laws § 56 (1971).

John was domiciled in Massachusetts at the time of his death,

and Yahoo! has offered nothing to suggest that jurisdiction over the assets of his estate lies anywhere other than Massachusetts. Nothing appears to connect John or the assets of his estate to California. The administrators are residents of Massachusetts and were appointed by the Probate and Family Court. Although the complaint alleges that Yahoo! is a Delaware corporation with a principal place of business in California, Yahoo! has explicitly disclaimed any ownership interest in the contents of the e-mail account. There is, accordingly, no relationship between the estate or the e-mail account to California that would make in rem jurisdiction over the e-mails reasonable in California. Yahoo! has not argued that the California probate court would have in rem jurisdiction over John's estate or its assets. See *Jacobson* v. *Mailboxes Etc. U.S.A., Inc.,* 419 Mass. at 579-580 (among factors to consider in fairness of enforcing forum selection provision is whether forum State would entertain action).

(iii) *Nature of the suit.* As noted above, the complaint seeks only a declaration that the contents of the e-mail account are assets of John's estate. Yahoo! has disclaimed any ownership interest in the contents of the account. Its interest in applying the forum selection and statute of limitations provisions in a suit confined only to that issue, therefore, is slight.[15]

(iv) *Scope of the forum selection clause.* Finally, we are of the opinion that the unreasonable breadth of the forum selection clause argues against its application to the plaintiffs in a suit confined to seeking a declaration regarding the assets of John's estate. Unlike typical forum selection clauses, there is no subject matter scope to the provision in the TOS: "You and Yahoo agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Santa Clara, California." As written, this provision would require a suit of any nature to be brought in California, even if it were not between the parties and did not concern the TOS or the e-mail account. The unreasonable breadth of the provision, particularly since it was contained in a consumer contract drafted unilaterally, argues against its application in this case.

Taking all these considerations together, we do not think it

[15]Yahoo!'s interest might be different if the estate were bringing suit about the services provided by Yahoo! pursuant to the TOS.

reasonable to enforce the forum selection and limitations provisions against the administrators of John's estate in a suit seeking only a declaration whether the contents of John's e-mail account are assets of his estate.[16]

3. *Whether the contents of the e-mail account are property of John's estate.* The ultimate question in this case is Yahoo!'s contention that the Stored Communications Act, 18 U.S.C. §§ 2701 et seq., prohibits disclosure of the contents of the e-mail account to the administrators of John's estate. Although Yahoo! asks us to affirm the dismissal below on this ground, the argument is raised only in a footnote, and without citation. It does not rise to a level of argument acceptable for appellate review. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). Moreover, the plaintiffs have not briefed the issue. In these circumstances, the question is best addressed on remand after full briefing and such further proceedings as the probate judge deems appropriate.

The judgment dismissing the complaint is reversed, and the matter is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[16]By contrast, if Yahoo! had established that the TOS was reasonably communicated to, and accepted by, Robert, we think it would have been reasonable to enforce the forum selection clause and the limitations provision to the claims he brings in his personal capacity.