Douglas S. Marshall (husband), the former husband of Kristen Marshall (wife), appeals from an amended judgment of divorce nisi (amended judgment), entered by the Probate and Family Court on June 24, 2015, principally challenging (a) the amount of the base alimony award, (b) the imposition of an additional, contingent alimony award tied to the husband's bonus income, and (c) the division of assets. We vacate the base and contingent alimony awards, and remand for further proceedings consistent with this memorandum and order. We affirm the remainder of the amended judgment.
Background. The parties were married in Pennsylvania on July 20, 1996. Two days prior to their wedding, the parties entered into an antenuptial agreement (agreement), governed by Pennsylvania law, designating which property would be subject to equitable distribution in the event of a divorce. The agreement provides, in relevant part, that (1) the parties' property rights would be determined as of the date of their physical separation; (2) each party would retain their "separate property" as defined in the agreement; and (3) any property not designated as "separate property" would be deemed "marital property" subject to equitable distribution. Included within the scope of "marital property" was any real property held by the parties as tenants by the entirety, and the agreement required the parties to hold title to their "primary residence" as tenants by the entirety "unless [they] specifically waive[d] such requirement." "Separate property" was defined in the agreement as "all business assets referred to in Sections 3 and 4 hereof, including appreciation and income therefrom." The parties expressly acknowledged that, "except for the provisions of [the] agreement," any appreciation in the "separate property" listed in Sections 3 and 4 would ordinarily constitute marital property subject to equitable distribution.[2] The "separate property" described in Sections 3 and 4 was limited to the parties' interests in their respective family businesses, and any property received through a family trust or inheritance.[3] However, additional "separate property" was listed on two schedules (Schedules A and B) attached to the agreement, including the husband's Canadian Registered Retirement Savings Plans (RRSP) and a Mcdermid Saint Lawrence (Mcdermid) account containing approximately $108,000 USD ($135,000 CDN).
On November 1, 2008, the parties separated and the husband moved out of 33 Ashton Avenue, the marital home. In May of 2013, the wife filed a complaint for divorce seeking alimony, child support, and an equitable distribution of the marital estate consistent with the parties' agreement. During the pendency of the divorce proceedings, the husband was ordered to pay temporary child support of $965 per week, base alimony of $1,355 per week, and additional unallocated support equivalent to thirty-three per cent of his bonuses, if and when received. On May 19, 2015, following a four-day trial, the judge issued a judgment of divorce nisi (judgment), along with extensive findings of fact spanning forty-five pages and containing 331 separate numbered findings. Finding the agreement to be valid and enforceable,[4] the judge concluded that the parties' property rights would be determined as of November 1, 2008, the date of their physical separation, and any property acquired after 2008 would be deemed "separate property." The judgment provided, in relevant part, that (1) the parties would share equally in the $922,000 equity value[5] of the marital home (33 Ashton Avenue); and (2) the husband would receive, as his separate property, the $443,634 rolled into the TD Ameritrade account from his Mcdermid account, the full equity value of his new home (173 Crafts Street), and the full value of his Canadian RRSP accounts. The judgment also required (1) the husband to pay child support of $965 per week, base alimony of $1,355 per week, and additional alimony equivalent to thirty-three per cent of any cash bonuses; (2) the parties to share equally in the children's extracurricular expenses, and (3) the wife to pay for the children's childcare expenses, her own health and dental insurance coverage, and to maintain a $250,000 life insurance policy naming the husband as beneficiary thereof until the children's emancipation.
The wife filed a timely motion to amend the judgment, asserting that the base alimony award did not meet her increased postdivorce expenses, and that certain aspects of the property division conflicted with the agreement and the judge's own findings.[6] The judge apparently agreed, allowing much of the wife's motion and issuing an amended judgment of divorce nisi (amended judgment) on June 12, 2015.[7] The amended judgment departed from the original judgment by (1) assigning the entire $922,000 equity in 33 Ashton Avenue to the wife as her "separate property" (rather than dividing it equally between the parties); (2) assigning the wife $84,312 as her share of the equity in 173 Crafts Street (which had previously been assigned solely to the husband); (3) assigning only $108,000 (rather than $443,634) of the TD Ameritrade account to the husband as his separate property; (4) assigning the wife $27,121 as her share of the "growth" in the husband's RRSP accounts (which had previously been assigned solely to the husband); (5) requiring the husband to reimburse the wife in the amount of $100,000 for her "separate property" used to purchase the husband's partnership shares in the now-defunct Monitor Group; and (6) increasing the base alimony award from $1,355 to $1,680 per week. The judge did not issue any additional or amended findings in support of the amended judgment. The present appeal by the husband followed.
Discussion. The husband claims error with respect to (1) the base and contingent alimony awards, and (2) the various amendments to the property division. We address the husband's arguments in turn.
1. Alimony. The husband argues that it was an abuse of discretion[8] for the judge to increase the base alimony award to $1,680 per week, and to make an additional, contingent alimony award tied to the husband's bonus income.
Alimony is governed by the Alimony Reform Act (the act), G. L. c. 208, §§ 48 - 55. " 'A judge has broad discretion when awarding alimony under the statute,' but the act establishes presumptive parameters: the amount of general term alimony 'should generally not exceed the recipient's need or [thirty] to [thirty-five] per cent of the difference between the parties' gross incomes established at the time of the order being issued.' " Young v. Young, 478 Mass. 1, 5-6 (2017), quoting Zaleski v. Zaleski, 469 Mass. 230, 235 (2014), and G. L. c. 208, § 53 (b ). "[W]here the supporting spouse has the ability to pay, 'the recipient spouse's need for support is generally the amount needed to allow that spouse to maintain the lifestyle he or she enjoyed prior to termination of the marriage.' " Young, supra at 6, quoting Pierce v. Pierce, 455 Mass. 286, 296 (2009).
Here, the judge found the parties enjoyed an "upper-middle class" lifestyle during the marriage, though they were "conservative" with their money, usually investing it instead of spending it on luxuries. The judge found the wife's claimed expenses of $2,719 per week to be "overstated," and concluded that the wife's needs could largely be met with the same amount of weekly child support ($965) and base alimony ($1,355) that she had been receiving under the temporary order.[9] The judge further found that any shortfall would be covered once the wife started working, despite that she had not worked since the birth of the parties' first child in 2000.[10] In her motion to amend, the wife argued, among other things, that the judge failed to take into consideration her increased expenses resulting from the financial obligations imposed on her by the divorce judgment.[11] The judge apparently agreed, increasing the weekly base alimony amount to $1,680 in the amended judgment. The husband claims this increased amount is an abuse of discretion as it exceeds the wife's need. We disagree.
"[B]oth the act and the case law interpret 'need' in terms of the marital lifestyle the parties enjoyed during the marriage, as established by the judge at the time of the order being issued, in this case, the judgment of divorce." Young, 478 Mass. at 6-7. Here, both parties were living relatively commensurate lifestyles at the time of the divorce, as reflected in their similar household spending.[12] See M.C. v. T.K., 463 Mass. 226, 234 n.11 (2012) ("standard of living ... may be closely linked to household spending"). There is no question that the husband has the ability to pay the increased amount of $1,680 per week, as his total weekly expenditures (including all support obligations) amount to $5,546, and he earns a weekly gross income of $9,394 (excluding bonuses). Accordingly, we cannot say the base alimony award of $1,680 per week is excessive or an abuse of discretion.
However, we conclude that the contingent alimony award tied to the husband's bonus income must be vacated in light of Young, supra. In Young, a case that was decided after the issuance of the amended judgment, the Supreme Judicial Court opined that "[t]here may be cases in which a variable or contingent [alimony] award is warranted, but such cases are the exception rather than the rule, and must be justified by the special circumstances of the case." Id. at 9. The judge's findings do not reflect any of the "special circumstances" justifying a contingent award, "such as where the supporting spouse's income is highly variable from year to year, sometimes severely limiting his or her ability to pay, and where a percentage formula, averaged over time, is likely not to exceed the needs of the recipient spouse."Id. at 10. Moreover, because the judge did not have the benefit of Young's guidance, it is unclear the extent to which the contingent bonus alimony award may have factored into the judge's calculation of the base alimony award. Accordingly, we vacate both the base and contingent alimony awards, and remand for reconsideration in light of Young. Though we are remanding both alimony awards due to their intertwined nature, we emphasize that the base amount of $1,650 has been affirmed. If the judge on remand determines that additional alimony above $1,680 per week is warranted, but does not find any "special circumstances" justifying a "variable or contingent" award under Young, the judge may, in his or her discretion, increase the base alimony award in an amount commensurate with the wife's need and the husband's ability to pay.[13]
2. Property division. The husband argues that the amended property division is inconsistent with both the judge's findings and the parties' agreement, specifically contesting the disposition of (a) 33 Ashton Avenue, (b) 173 Crafts Street, (c) the appreciation of his separate property held in the TD Ameritrade and RRSP accounts, and (d) the wife's Monitor Group investment.
a. 33 Ashton Avenue. The husband claims it was error to assign the full equity of 33 Ashton Avenue to the wife as her separate property, as that particular asset was designated marital property under the agreement. The agreement provides, in relevant part, that any real property held as tenants by the entirety would be deemed marital property, and requires that the parties hold title to their "primary residence" as tenants by the entirety "unless [they] specifically waive[d] such requirement." The judge found that 33 Ashton Avenue "would have been marital property as defined by the parties' [a]greement"; however, the parties had executed a "valid," albeit unrecorded, deed transferring title to the wife individually in 2012. The judge found the husband had "signed over all of the equity in [33 Ashton Avenue] to the [w]ife," effectively converting that asset into the wife's separate property. The husband contends the transfer was not valid because the deed was never recorded, and the agreement does not authorize the conversion of marital property to separate property. We disagree.
While the agreement is silent regarding the conversion of marital property into separate property, the agreement does expressly allow the parties to waive the requirement that title to their primary residence be held as tenants by the entirety. Moreover, the agreement permits the modification or waiver of its provisions with a written instrument signed by both parties.[14] It was therefore appropriate to treat the deed, signed by both parties, as a valid modification or waiver of the agreement's provisions requiring that the parties' "primary residence" be held as tenants by the entirety and deemed marital property. This conversion of 33 Ashton Avenue from marital property to the wife's separate property was also consistent with the spirit of the agreement -- to preserve the parties' respective premarital and family assets -- as the judge found the marital home was purchased entirely with funds furnished by the wife and her mother.[15] See Merrimack College v. KPMG LLP, 88 Mass. App. Ct. 803, 805 (2016), quoting Sullivan v. Southland Life Ins. Co., 67 Mass. App. Ct. 439, 442 (2006) ("The objective is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose"). Accordingly, we discern no error in assigning the full equity of 33 Ashton Avenue to the wife as her separate property.
b. 173 Crafts Street. The husband contends it was error to reimburse the wife for her "share" of the equity in 173 Crafts Street, as the judge found that any property acquired after 2008 constituted separate property. We disagree. While the judge found 173 Crafts Street, which was purchased in 2009, to be the husband's separate property, she also found that the $150,000 down payment was comprised of "marital funds" withdrawn from the TD Ameritrade account held in the wife's name.[16] There is no indication, either in the judge's findings or in the record, that the wife effectively waived her right to share in the marital property used by the husband to purchase 173 Crafts Street. Accordingly, we discern no error in the amended property division as it pertains to 173 Crafts Street.
c. Appreciation of the husband's separate property. The husband claims the judge erroneously treated the appreciation of his separate property (held in the TD Ameritrade and RRSP accounts) as marital property, in contravention of the parties' agreement. We disagree.
As found by the judge, the agreement provided that any appreciation during the marriage of the separate property described in Sections 3 and 4 would constitute separate property, rather than marital property.[17] In the initial judgment, the judge assigned to the husband, as his separate property, the appreciation in (a) his Canadian RRSP accounts, and (b) the funds originally held in his Canadian Mcdermid account (later transferred to the parties' TD Ameritrade account). In her motion to amend, the wife argued that this was error because the husband's RRSP and Mcdermid accounts were not part of the separate property specifically described in Sections 3 and 4 of the agreement, thus any appreciation of those assets during the marriage constituted marital property. The judge apparently agreed, as the amended judgment treated the appreciation of the Mcdermid and RRSP accounts as marital property, and divided such appreciation equally between the parties.[18]
In allowing the wife's motion to amend, the judge implicitly adopted her interpretation of the agreement that only the appreciation of assets specifically listed in Sections 3 and 4 of the agreement constituted separate property. Our reading of the agreement is consistent with this interpretation. See Colorio v. Marx, 72 Mass. App. Ct. 382, 386 (2008) (contract interpretation is question of law "afforded plenary review"). The agreement's language carves out an exception to the general rule under Pennsylvania law that any appreciation of assets (both separate and marital) during the marriage shall constitute marital property subject to equitable distribution. See 23 Pa. Cons. Stat. § 3501 (definition of marital property includes "the increase in value of any nonmarital property"). The agreement plainly states that this exception applies to the separate property specifically described in Sections 3 and 4 of the agreement. The husband's Mcdermid and RRSP accounts, while constituting separate property under the agreement, were not part of the assets specifically described in Sections 3 and 4.[19] While the judge's findings certainly could have been clearer on this point, she was nevertheless correct in treating the appreciation of those accounts as marital property, as they were not specifically included in the exception carved out by the agreement. See Kobico, Inc. v. Pipe, 44 Mass. App. Ct. 103, 108 (1997), citing Restatement (Second) of Contracts § 203(c) (1981) (specific and exact terms in contract given greater weight than general language). Accordingly, we discern no error in the amended property division as it relates to the RRSP and TD Ameritrade accounts.
d. Monitor Group investment. The husband argues it was error to require him to reimburse the wife for the $100,000 investment of her separate property in the now-defunct Monitor Group. We disagree.
The judge found that, during the marriage, the husband purchased partnership shares in Monitor Group using $100,000 of the wife's "separate property." Despite finding that the wife was entitled to the reimbursement of those funds, the judge failed to address the $100,000 investment in the initial judgment. However, the amended judgment corrected this omission, requiring the husband to reimburse the wife for $100,000 of her separate property invested in Monitor Group on his behalf. The husband contends it was error to reimburse the wife for what was essentially a poor investment, as his partnership shares had been "wiped out" by the time of the divorce due to Monitor Group declaring bankruptcy in 2012.[20] However, as of November 1, 2008, the date for determining the parties' property rights under the agreement, the husband's partnership shares in Monitor Group were still in existence.[21] As the judge correctly found, the wife never executed an instrument converting the $100,000 investment into marital property, as provided for in the agreement, thus the $100,000 remained the wife's separate property at the time of the parties' separation in 2008. Accordingly, it was not error to order reimbursement of that amount to the wife in the amended judgment.
Conclusion.[22] The portions of the amended judgment requiring the husband to pay weekly alimony of $1,680 and additional alimony equivalent to thirty-three per cent of his bonus income are vacated and remanded for further proceedings consistent with this memorandum and order. The husband shall pay temporary alimony to the wife of $1,680 per week during the pendency of the remand. The remainder of the amended judgment is affirmed. The wife's request for appellate attorney's fees and costs is denied.
So ordered.
Affirmed in part; vacated in part and remanded.

The agreement did carve out one exception, providing that any "income and appreciation from the investment of the proceeds received from the disposition of separate property" would be deemed marital property. However, the proceeds themselves would remain separate property.

As described in Section 3, the wife's "separate property" consisted of (1) all interests in Burgoyne, Inc., including "all income and profits from such property (other than income and profits derived from the reinvestment of such property ...)"; (2) any real property associated with Burgoyne, Inc.; (3) all property of any trust established by a member of the wife's family; and (4) any other property acquired by inheritance, except for "any income, rents and profits from such property, and any increase in value therein subsequent to the date of acquisition." As described in Section 4, the husband's "separate property" consisted of (1) all interests in Nextest, Inc., including "all income and profits from such property (other than income and profits derived from the reinvestment of such property ...)"; (2) any real property associated with Nextest, Inc.; (3) all property of any trust established by a member of the husband's family; and (4) any other property acquired by inheritance, except for "any income, rents and profits from such property, and any increase in value therein subsequent to the date of acquisition."

Neither party challenged the validity of the antenuptial agreement at the trial.

This amount represented the equity remaining after deducting the $178,000 mortgage gifted to the wife by her mother, which the judge found to be the wife's separate property.

The husband claimed in his brief that the wife's motion to alter or amend was untimely; however, the husband later waived that issue at oral argument, having conceded the motion was indeed timely.

The judge allowed the wife's motion to alter or amend on June 12, 2015. The husband subsequently filed a motion to vacate the judge's June 12 ruling, which was denied on July 28, 2015.

"[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made 'a clear error of judgment in weighing' the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives." L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014), quoting Picciotto v. Continental Cas. Co., 512 F.3d 9, 15 (1st Cir. 2008).

The judge's skepticism toward the wife's claimed expenses appeared to be largely driven by the fact that, during the pendency of the divorce proceedings, the temporary child support and base alimony awards totaling $2,320 left the wife with a "weekly deficit" of $399, which the judge found "mathematically impossible" for the wife to maintain while "simultaneously increasing her assets and incurring no debt" during the same period. However, the "deficit" was almost entirely covered by the additional support of $385 per week that the wife received from the husband's bonus income.

The wife obtained a Master's Degree in Social Work from Boston University in May of 2014, but had not yet undergone the licensing exam at the time of the trial. The wife testified that she hoped to eventually earn $50,000 annually; however, the judge noted that the wife had never earned that much. The judge nevertheless found the wife capable of working and found her capable of meeting the shortfall even with an annual income of $25,000.

These additional expenses included, but were not limited to, health and dental insurance coverage for herself, along with life insurance coverage.

However, the husband's reported expenses of $2,901 per week (excluding support obligations) are slightly higher than those claimed by the wife. See Goldman v. Goldman, 28 Mass. App. Ct. 603, 611 (1990) ("Absent good reason, in a long term marriage, there is no justification for the life-style of one spouse to go down while the other remains high").

We do not suggest that additional alimony is warranted.

The agreement provides that "[n]o modification or waiver of any of the terms hereof shall be valid unless in writing and signed by both parties ...."

The judge found that 33 Ashton Avenue was purchased with a combination of $449,000 from the wife's personal accounts, and a $300,000 mortgage from the wife's mother. "The [w]ife's mother made a series of gifts over the years, reducing the principal on the mortgage from $300,000 to $178,000." The wife's mother then forgave the remaining balance; the judge found that the wife acquired, by gift from her mother, the $178,000 mortgage on 33 Ashton Avenue, which constituted her "separate property."

There was an outstanding mortgage on 173 Crafts Street of approximately $415,752 as of January, 2015; the appraised value was $625,000 as of June, 2014. The initial judgment awarded the husband the entire equity in 173 Crafts Street as his separate property. The wife argued in her motion to amend that the husband was only entitled to retain as his separate property the equity gained from his mortgage payments ($40,623), and that the remaining equity ($168,625) constituted marital property subject to equitable division. The amended judgment required the husband to pay the wife approximately $84,312 for her "share of the equity" in 173 Crafts Street.

The relevant language provides that "except for the provisions of this agreement, any increase in value or income from [the] separate property as described in paragraphs A, B, C and D of [Sections 3 and 4] after the marriage is entered into would be marital property ... but that by the provisions of this agreement any such increase in value or income is made ... separate property."

The amended judgment assigned only $108,000 USD (approximately $135,000 CDN) of the TD Ameritrade account to the husband as his separate property, which represented the original balance of the husband's Mcdermid account at the time of the marriage. The balance of the TD Ameritrade account, after deducting the wife's separate property, was divided equally between the parties, as was the appreciation in the husband's RRSP accounts.

They were instead listed on Schedule B, which contained additional "separate property" not included in Sections 3 and 4.

The husband testified that "all of the investments in Monitor, all of the preferred shares have been wiped out, as have all the common equity."

Indeed, the husband testified that Monitor Group's assets, including the husband's shares in the company, still existed in 2008 at the time of the separation. While he claimed that his Monitor Group investment was worth little by that time due to the company's financial difficulties, he admitted that he was still receiving interest on his investment in 2008.

To the extent that we do not address the husband's other contentions, they "have not been overlooked. We find nothing in them that requires discussion." Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).